OPINION OF THE COURT
Anthony J. Carpinello, J.
Defendants Syracuse University (University) and Douglas Biklen move for summary judgment pursuant to CPLR 3212 dismissing the complaint herein on the grounds that it does not state a cause of action against them. The complaint contains claims based upon fraud and violation of the provisions of the Education Law governing the practice of speech-language pathology. Because the plaintiffs’ claims are so wholly baseless as to border on the frivolous, the motion for summary judgment is granted, with costs to defendants.
The facts giving rise to the instant case are highly unusual and indeed tragic. Plaintiffs’ daughter Jenny Storch is autistic and cannot speak. In 1991, Jenny began attending the Devereux School in the Town of Red Hook. Apparently, in November of that year, one of the aides employed by the School reported that Jenny claimed to have been sexually assaulted by her father, the plaintiff Mark Storch. Jenny was alleged to have imparted this information by means of a process known as "facilitated communication.” Briefly, facilitated communication is a technique whereby a "facilitator” supports an individual’s hand, wrist or arm as he or she spells out messages by pointing to the appropriate letters of the alphabet on a keyboard or some other communication device. Proponents of this theory maintain that in certain nonverbal people their communicative skills may be impaired, but their cognitive and other receptive abilities may be substantially intact and that facilitated communication taps into those otherwise intact *623 abilities and assists the individual to communicate. Defendant Biklen, a professor at Syracuse University, is a leading advocate of facilitated communication, having brought the technique to the United States in 1989 from Australia, where it was first developed in the 1970s. Biklen published an article entitled "Communication Unbound: Autism and Praxis” in the Harvard Educational Review in August of 1990, and this article was among the first published about the technique in the United States. Biklen was also responsible for the establishment of the Facilitated Communication Institute at the University in July of 1992. The Institute apparently offers workshops and training in facilitated communication.
According to the allegations of the complaint, the School reported the "accusation” of abuse to the New York State Central Register of Child Abuse and Maltreatment. The Ulster County Department of Social Services subsequently brought a petition in the Family Court charging the plaintiffs with abuse. During the early stages of this matter, an attorney at the Ulster County Department of Social Services apparently contacted Biklen to ask him about facilitated communication. Jenny was removed from her parents’ custody following the filing of the petition. At the Family Court hearing, the Family Court Judge, applying the test set forth in the case of Frye v United States (293 F 1013), determined that facilitated communication was not generally accepted as reliable within the relevant community, and consequently refused to accept testimony elicited by way of facilitated communication. Following this determination, the Ulster County Department of Social Services withdrew its petition, and the proceeding was discontinued.
In January 1994, the plaintiffs commenced an action in Federal District Court against a number of parties, including the defendants herein and the County of Ulster. The Federal complaint sought damages for State and Federal civil rights violations, malicious prosecution, fraud and malpractice. The plaintiffs also alleged that Syracuse University and Biklen specifically were guilty of a violation of Education Law articles 130 and 159. The University and Biklen moved to dismiss for failure to state a claim and lack of subject matter jurisdiction. In an opinion dated June 13, 1994, the District Court (Cholakis, J.), while noting that State claims filed against the University and Biklen were of "questionable merit,” determined that the Federal courts did not possess subject matter jurisdiction over the State law claims asserted against the *624 University and Biklen and dismissed the complaint in its entirety as to those defendants.
In November of 1994, the plaintiffs commenced the instant State court action against the University and Biklen raising substantially the same claims as were raised in the Federal action. Although the complaint does not denominate separate causes of action, the substance of the complaint is that facilitated communication is a hoax, that the University and Biklen knew or should have known it was a hoax even as Biklen disseminated the theory to audiences for a fee, and that Biklen and the University knew or should have known that innocent people would be falsely accused of sexually abusing autistic children. Further, the plaintiffs charge that Biklen knowingly concealed from the Ulster County Department of Social Services evidence that would have shown that facilitated communication was a hoax. Finally, the plaintiffs charge that the defendants knew or should have known that those who learned facilitated communication intended to practice speech/language pathology in an unauthorized or grossly negligent manner, in violation of articles 130 and 159 of the Education Law.
Defendants argue that there is no basis for the plaintiffs’ allegations that facilitated communication is a hoax. They attach to their moving papers an affidavit from the defendant Biklen, in which he lists certain of the literature that has been generated on the topic over the past several years and indicates the extent of the controversy that has arisen with regard to the validity of facilitated communication. Biklen denies having hidden or obscured the limits of this device; he points to language in his 1990 article in which he stated that "facilitators often find themselves inadvertently cuing their nonspeaking partners to letters and therefore to words or statements. This is particularly true with people who are just learning to communicate by typing with facilitation.” Further, while admitting that he was contacted by an attorney for the Ulster County Department of Social Services, he states that he was not a paid consultant and did not participate in the Family Court proceedings involving the plaintiffs. Rather, he maintains that he informed the attorney about the ongoing controversy as to the efficacy of facilitated communication. This version of events is borne out by an affidavit from Pamela J. Joern, an attorney for the Ulster County Department of Social Services, in which she states that she did contact Biklen and the two discussed the controversy sur *625 rounding facilitated communication and methods of corrobating statements that were purportedly made through the use of this device. She also states unequivocally that Biklen was not paid for his time or services and was never retained by the Department as an expert.
The standard for evaluating motions for summary judgment is well established. "To obtain summary judgment it is necessary that the movant establish his cause of action or defense 'sufficiently to warrant the court as a matter of law in directing judgment’ in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067). By contrast, the party opposing summary judgment must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure so to do” (Zuckerman v City of New York, 49 NY2d 557, 560).
"To grant summary judgment it must clearly appear that no material and triable issue of fact is presented * * * This drastic remedy should not be granted where there is any doubt as to the existence of such issues * * * or where the issue is 'arguable’ * * * 'issue finding, rather than issue-determination, is the key to the procedure’ ” (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 396, 404 [citations omitted]; see also, Moskowitz v Garlock, 23 AD2d 943, 944).
In opposition to the defendants’ motion herein, the plaintiffs attach to their answering papers affidavits from Gina Green, director of research at the New England Center for Autism, and Robert A. Cummins, a member of the faculty at Deakin University in Victoria, Australia. Dr. Green states that in 1991, as parents of children in the New England Center for Autism began using facilitated communication, Green was charged with the responsibility of searching the scientific literature that was in existence at that time regarding the technique. Apparently, according to Green’s account, the only article then in existence was Biklen’s "Communication Unbound” article. Since then, Green has reviewed research and data in the field and notes that a number of peer reviewed studies which have appeared in journals over the past several years have indicated that facilitated communication fails to meet even minimal scientific standards of validity, reliability and efficacy. In his affidavit, Dr. Cummins states that it is his belief that facilitated communication has the potential to be dangerous and does not reflect the thoughts of the autistic *626 child and that he communicated this to Biklen before Biklen wrote his "Communication Unbound” article in 1990, but that Biklen ignored Cummins’ criticism and wrote an article that was favorable regarding the technique. Also attached to the plaintiffs’ submissions are statements from the American Academy of Child and Adolescent Psychology (dated Oct. 20, 1993) , the American Psychological Association (dated Aug. 14, 1994) , and the American Speech-Language Association (dated Nov. 1994) stating, in effect, that there is no demonstrable scientific evidence that facilitated communication is a valid technique for autistic or mentally retarded individuals. Plaintiffs also include a number of articles critical of facilitated communication.
As a preliminary matter, the Appellate Division recently held in a similar case also involving an autistic child that it was error for Family Court to have applied the Frye test with regard to the validity of facilitated communication and its acceptance within the scientific community (see, Matter of Luz P., 189 AD2d 274). The Court held that while the Trial Judge must adopt steps to verify that the testimony is in fact the testimony of the child and not the testimony of the facilitator, it was error to first require that the Frye test be satisfied. The Appellate Division thus concluded that the question of the reliability of facilitated communication should be determined on a case-by-case basis. While not passing upon the validity of facilitated communication, the Appellate Division nonetheless contemplated that lower court Judges confronted with the issue would make individualized determinations regarding its efficacy and reliability in particular cases.
Plaintiffs claim that the defendants committed actionable fraud. To plead a cause of action for fraud, the plaintiffs must allege representation of an existing fact, falsity, scienter, deception and injury (Edison Stone Corp. v 42nd St. Dev. Corp., 145 AD2d 249, 257; see also, Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403, 407). Defendants contend that the plaintiffs have failed to demonstrate a misrepresentation of a material existing fact and that the cause of action for fraud must fail for that reason. It is important first to take note of the fact that the events which form the basis for this cause of action took place in late 1991 and 1992. Thus, this court must turn to the state of knowledge regarding facilitated communication as it existed at that time. It is clear from the submissions produced by both plaintiffs and defendants that many articles have been written about facilitated commu *627 nication since defendant Biklen first wrote about the technique in 1990 and that over the past five years, facilitated communication has become a highly controversial area of study. In Dr. Green’s affidavit offered in opposition to the defendants’ motion, she takes note of the fact that at the time she began her examination into facilitated communication in 1991, "the scientific literature on autism, mental retardation, and methods for teaching communication, academic and other skills to individuals with those and other disorders contained no studies on the efficacy or risks of [facilitated communication].” That is certainly the case no longer. A number of studies have apparently been undertaken since then, several of which have demonstrated that the facilitator may exercise unintended control over the subject matter communicated.
The issue of facilitator influence was discussed at length in Biklen’s 1990 "Communication Unbound” article. Under a subheading entitled "Doubts: Facilitation or Manipulation?”, Biklen noted that facilitators frequently cue their partners unintentionally. He stated that "[sjeveral facilitators, including speech therapists, teachers, and parents, encountered difficulty in identifying the source of certain communication: either it had been generated by the person being supported or by their own unconscious selection or cuing. They reported instances where they had believed the communication to be genuine only to discover that it reflected their own subtle cues.” Later, he noted that there had been some criticism of the technique as it had developed in Australia and that the 1989 findings of the Intellectual Disability Review Panel, which was a governmental inquiry sponsored by the State of Victoria, Australia, into the validity of the technique, were "equivocal” and that "the two parts of the [Panel’s] study had produced support for those who claimed facilitated communication had validity and for those who doubted it” (emphasis in original). Thus, as of late 1990, Biklen, who was one of the first to write about the technique, himself noted the problem of facilitator influence and that the existing scientific data was equivocal.
Even taking the plaintiffs’ allegations as true, as this court must for purposes of this motion, the worst that can be said about defendant Biklen based on the record before this court is that he is an enthusiastic advocate of facilitated communication, which has proven to be a highly controversial theory, that a number of studies undertaken in the years following the introduction of facilitated communication to the *628 United States have indeed revealed that facilitator influence appears to be a problem that affects the validity of the technique, and that Biklen’s optimistic opinions regarding the capability of autistic children to communicate may have been premature. In any event, any statements made by Biklen in 1990 and 1991 regarding the efficacy of facilitated communication were his opinions based upon the limited data available at that time. There is no evidence that he misrepresented a material existing fact at that time; rather, Biklen offered his opinion about the efficacy of a controversial and largely untested theory. Given that a statement of opinion cannot serve as the basis for an action based on fraudulent misrepresentation (see, e.g., Paladino v Adelphi Univ., 89 AD2d 85, 94), it would appear that plaintiffs have failed to satisfy the first two prongs of the test for fraud — representation of a material existing fact and the falsity of that misrepresentation.
In addition, plaintiffs have also failed to demonstrate that the defendants owed them any sort of duty. Defendants have absolutely no relationship at all, fiduciary or otherwise, with the plaintiffs, and there is ordinarily no duty to disclose information absent such a relationship (Saslow v Novick, 19 Misc 2d 475, 477). Defendants seek to avoid this obstacle by arguing that because Biklen teaches facilatated communication at seminars held at the University, a cause of action exists in favor of anyone touched by those representations, however tangentially. Thus, plaintiffs’ theory of recovery is based upon certain cases which hold that if representations are made to the public at large "for the purpose of influencing the action of anyone who may act upon these representations, a common-law cause of action for fraud lies in favor of any individual who acts upon them and is injured thereby” (Young v Robertshaw Controls Co., 104 AD2d 84, 86, appeal dismissed 64 NY2d 885). Using these cases as a springboard, plaintiffs look to expand liability past those who sit in the classroom to anyone whose life has been touched by an idea or theory. Thus, the factory worker whose job is eliminated because a machine can do the job more quickly would have a cause of action against the inventor of the machine for lost wages or other consequential damages. Plaintiffs cite no authority for this ambitious expansion of principles of tort law, and offer no coherent response to defendants’ argument that a cause of action of this kind would clamp down on creative thought and scientific study.
It should be noted preliminarily that the Facilitated Com *629 munication Institute opened in July of 1992, after the Family Court proceedings involving plaintiffs were already underway. But even if this court were to assume that Biklen was teaching the technique of facilitated communication to audiences in 1990 and 1991, there is absolutely no basis for imposing liability based upon his advocacy of a controversial philosophy regarding the abilities of autistic children. There is absolutely no proof before this court that Biklen knowingly failed to disclose information, that he acted with knowledge of the "false” nature of facilitated communication at the same time as he taught it to students, and that he concealed any information from the Ulster County Department of Social Services. If anything, the attachments to plaintiffs’ submissions reveal that a vigorous debate on facilitated communication has been taking place for at least five years, and that introduction of the theory to the United States has provoked a good deal of research into the communication abilities of autistic and mentally retarded children. Further, this court is simply not qualified to determine that facilitated communication is a hoax as a matter of law.
However much this court may sympathize if facilitated communication has not proven to be the panacea that many parents hoped and if it has led to tragic situations like that experienced by the plaintiffs, there is simply no basis for placing responsibility for these events on the shoulders of the man who brought the theory to this country and touched off the debate surrounding its efficacy. Consequently, the plaintiffs’ complaint, insofar as it alleges that the defendants Biklen and the University are guilty of fraud, is hereby dismissed.
The plaintiffs also claim that the defendants should be held liable because by teaching facilitated communication, they promote violation of Education Law § 8202, which provides that "[o]nly a person licensed or otherwise authorized under this article shall practice speech-language pathology or use the title speech-language pathologist.” Speech-language pathology is defined as "the application of principles, methods and procedures of measurement, prediction, non-medical diagnosis, testing, counseling, consultation, rehabilitation and instruction related to the development and disorders of speech, voice, and/or language for the purpose of preventing, ameliorating or modifying such disorder conditions in individuals and/or groups of individuals” (Education Law § 8201). Education Law § 6512 provides that anyone who is not authorized to *630 practice in any profession in which a license is required, including that of speech-language pathologist, "who aids or abets an unlicensed person to practice a profession” is guilty of a class E felony. Because Biklen is a professor in an institute of higher learning, he is exempt from the provisions of this section (Education Law § 8207). This court concludes as a matter of law that facilitated communication does not relate to "the development and disorders of speech, voice and/or language” and that the use of facilitated communication therefore does not constitute the practice of speech-language pathology. Any other result would clamp down on innovative technologies that foster the development of communication skills for the physically disabled. For example, persons involved in assisting quadriplegics to communicate via head mounted or eye activated devices which interact with the computer technology would be guilty of a class E felony if they were not first licensed as speech-language pathologists. For that reason, to the extent that plaintiffs purport to rest their complaint upon violations of the Education Law, this court concludes that they have again failed to state a cause of action against the defendants.
The court similarly rejects the plaintiffs’ imaginative effort to equate placing an idea in the stream of commerce to placing a product in the stream of commerce in order to argue that principles of strict product liability would apply whenever any person, however remote, was injured by virtue of the existence of that idea. Plaintiffs offer no precedent for this expansion of the concept of strict products liability. Indeed, this court finds such an expansion to be wholly unwarranted both as a matter of policy and a matter of common sense. Similarly, this court rejects the plaintiffs’ effort to draw parallels between this case and cases in which teachers have been held liable for personal injuries sustained by students under their care (see, e.g., Yarborough v City Univ. of N. Y., 137 Misc 2d 282 [student injured while practicing sack race in a plastic sack on a wooden floor]). While a teacher does have a responsibility not to direct a student to engage in activities that the teacher knows is dangerous (see, Verduce v Board of Higher Educ., 8 NY2d 928), these cases do not provide authority for the proposition that a teacher has a responsibility not to teach theories that are controversial and the subject of ongoing debate and discussion. Further, cases involving personal injuries to students who are inadequately supervised by school personnel certainly do not serve as support for the *631 theory urged by the plaintiffs herein — that having disseminated an idea or theory in class, an instructor is liable to anyone whose life may be touched by that idea, even if that person was never in the classroom and had no contact or relationship of any kind with the instructor.
Having considered defendants’ arguments in support of their motion for summary judgment and all of plaintiffs’ arguments in opposition thereto, this court concludes that plaintiffs have utterly failed to state a cause of action against the defendants Douglas Biklen and Syracuse University. The motion for summary judgment as filed by these defendants is granted, with costs, and plaintiffs’ complaint is dismissed in its entirety as to these defendants.
Similarly, despite the fact that there is no pending motion for summary judgment from defendant Susan Glickman, it is equally apparent that plaintiffs have also failed to state a cause of action against her. According to the complaint, defendant Glickman taught the technique of facilitated communication to the school employee who claimed that Jenny Storch imparted allegations of sexual abuse via facilitated communication. Plaintiffs themselves note that Glickman is a teacher, and, thus, like Biklen, is apparently exempt from Education Law § 6512. Likewise, this court’s determination regarding the merit of plaintiffs’ claims of fraud, "strict products liability,” and simple negligence compel the conclusion that these claims are also untenable to the extent that they are also asserted against Glickman. Glickman is not represented by counsel in this matter. Further, in response to the instant motion for summary judgment, plaintiffs have produced voluminous submissions. It is difficult for this court to imagine what additional factual or legal ammunition would have been marshalled in response to a second motion for summary judgment by defendant Glickman. For these reasons, and in the exercise of its discretion, this court additionally dismisses the complaint in its entirety as against defendant Glickman (cf., Ressis v Mactye, 98 AD2d 836, 837).