Everett W. Fay, et al. v. Paul A. Van Ells, et al.

[367 A.2d 167]

No. 96-75

Present: Barney, C.J., Smith, Daley, and Larrow, JJ. and
Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed November 1, 1976

*Curtis L. Bourdon,* Woodstock, for Plaintiffs.

*Oreste V. Valsangiacomo, Jr.,* of *Richard E. Davis Associates, Inc.,* Barre, for Defendants.

**Barney, C.J.** The failure to consummate a real estate sale of a business with living quarters attached brought a chain of troubles in its wake. These troubles resulted in several sorts of court actions, but the principal lawsuit is now here. The plaintiffs, owners of the property in question, recovered a judgment representing rental for the property and inventory of the store stock sold or destroyed.

The case has a complex factual background, reported in findings. The plaintiffs Everett W. Fay and his wife Dorothy jointly owned a store in Bridgewater with a seven-room apartment upstairs. In 1972, the plaintiffs were having marital difficulties and a divorce action was commenced. A temporary order provided, among other things, that if the property was sold, the net proceeds would be held in escrow. Everett Fay listed the property with a United Farm real estate agent, defendant Ferris Bridge. Mrs. Fay did not sign the listing.

The defendants Mr. and Mrs. Van Ells, having put their Connecticut house on the market, were looking for a Vermont store business to purchase. Through defendant Bridge they came to know of the Fay property. Negotiations followed and a contract of sale was signed by Everett Fay and the Van Ells on October 24, 1972. The Van Ells had placed a $500 deposit

with the broker. Mrs. Fay did not sign, although the contract listed her as a party. Both Bridge and Fay indicated to the Van Ells that one signature was sufficient. This was the advice received from an attorney based on the pendency of the divorce action.

The Van Ells called in an attorney who conducted a title search, and pointed out to them the difficulty involved with the lack of Mrs. Fay's signature. Meetings between the parties and their various attorneys were held and negotiations continued into the middle of November. At that time, Mrs. Fay indicated that she would be willing to sign a deed if certain concessions relating to commission and the assumption of back taxes were met. Defendant Paul Van Ells testified that these represented a price increase of about $500, which they could not afford. On December 14, 1972, in response to Van Ells' request, their deposit was returned to them by the real estate agent. The original deposit had been augmented on November 1 for reasons that will be explained.

Going back to October, the Van Ells' house in Connecticut had been sold, with occupancy set for November 1. Late in October they brought several loads of their personal belongings to Bridgwater and stored them in the store premises with the assistance of Mr. Bridge. At this time Mr. Fay was anxious to have the store operating, so he gave the Van Ells written permission to move into the apartment and operate the store in advance of sale. The parties agreed on a price for the inventory, and the deposit was increased accordingly. The Van Ells purchased additional inventory of their own and put it on the shelves with the rest.

The Van Ells continued to occupy the apartment from November 1 until the following June 19, 1973, paying no rent. They operated the store, selling from both inventories, until a restraining order was served on them on January 12, 1973. No rent was paid for the store. The plaintiffs were never paid for the inventory.

The lower court found the fair and reasonable rental value for the store premises to be $250 per month plus utilities, and for the apartment, $150 per month including utilities. This was based on testimony from a real estate appraiser familiar with the property.

After the court order of January 11 was in force, a petition for contempt was filed by the Fays against the Van Ells. No violation was found by the hearing judge. Mrs. Fay became convinced that inventory was being taken from the store by the Van Ells. She saw a truck backed up to the front door and things being loaded into it. She and her attorney went to the state's attorney and persuaded him to issue warrants charging the Van Ells with grand larceny.

Two state police officers went to the store premises. The Van Ells showed the officers the inventory still in the building, and supporting documentation. After a phone consultation with the state's attorney, the warrants were withdrawn and torn up. The Van Ells were not arrested or removed from the premises.

In June of 1973, the Van Ells vacated the property. Both the store and the apartment were found to be in a great state of disrepair and disorder. Food had spoiled in the store, and there had been a small fire in the apartment.

Suit to regain possession of the premises, as well as to recover rent, damage and loss of inventory, was actually commenced in January, 1973. It was in connection with the initiation of this suit that the restraining order issued, although occupancy continued until June. In response to this action there were counterclaims and cross actions. As between the plaintiffs Fay and the defendants Van Ells, the defendants claimed the right to recover for fraudulent misrepresentations, for breach of contract, for assault and for malicious prosecution, to state them broadly. The lower court found against the defendants on these counterclaims, and in favor of the plaintiffs for rent, inventory loss and damage in the amount of $3,325. The defendants Van Ells have appealed.

Part of the basis of their appeal is the disposition of their counterclaim for malicious prosecution. As already noted, this was one of several counter and cross claims filed in this case. The issues here relate to matters raised by the plaintiffs' complaint and the disposition of the malicious prosecution and other counterclaims.

We turn first to the claim that the lower court's conclusion with respect to mutual mistake was not supported by the evidence, nor was mutual mistake or actionable fraud correctly defined in those conclusions. Preliminary to an examination of

that contention is the question of whether, even assuming error of one sort or another, such an error has any legal significance.

The defendants are not seeking relief from a bad bargain, since none came about. They are not here asking for specific performance of a bargain they claimed to have made. Indeed they do not claim there was one. Since the sale of their Connecticut house antedated their negotiations with the plaintiff, nothing by way of detrimental reliance can be attributed there.

It was the testimony of the defendant that he and his wife decided to move permanently to Vermont sometime in the beginning of October, 1972. The contract of sale was entered into on October 24, 1972. Three days later, Mr. Van Ells showed up in Bridgewater with a load of his belongings. On October 25 an attorney was employed on behalf of the Van Ells, and on October 26 he commenced his title search. The attorney immediately discovered that Mrs. Fay was a joint owner, and the attorney communicated that fact to the Van Ells. Meanwhile, Mr. Fay had first allowed the Van Ells to store their goods on the premises, and then given them permission to occupy the apartment and operate the store.

By this time the defendants were on notice from their own attorney that the contract of sale was considered by him not to bind Mrs. Fay. It is apparent that all parties were still apparently acting on the assumption that the sale would be consummated. Mrs. Fay never refused to convey, but said that she would sign a deed if some $500 to pay some back taxes was added to the $40,000 price. This offer was never accepted by the Van Ells, nor did they ever tender the $40,000 stated in the original contract. They simply asked for their deposit back, which they got, and went no further with the transaction, while continuing to occupy the apartment and store.

██ ██ To support a claim sounding in fraud, it is a key element that the representations must be relied upon to the claimant's damage. *Batchelder* v. *Birchard Motors, Inc.*, 120 Vt. 429, 433, 144 A.2d 298 (1958). Here the contract not only was never consummated, but there is no evidence of any detrimental reliance resulting in damage. Without that showing, the defendants' complaints about erroneous definitions of

fraud or mutual mistake have no meaning and provide no basis for a finding of error.

The defendants also raise the issue that the trier of fact gave insufficient weight to the verified complaint as an inconsistent statement. The short answer is, of course, that that weighing process is the proper function of a trial court, not to be challenged here unless the evaluation amounts to an abuse. Also, the defendants criticize the trial court for commenting that such complaints may be expected to be internally inconsistent. Since this is explicit in V.R.C.P. 8(e)(2), it certainly cannot be said to be error.

In connection with the defendants' counterclaim for damages based on a claim of malicious prosecution, they attack the lower court's finding that the plaintiff Dorothy Fay and her attorney both firmly believed that a larceny was occurring. This finding, say the defendants, has no evidentiary support. Yet they leave unchallenged the preceding finding that recites that Mrs. Fay had seen a truck backed up to the front door of the premises and things being taken out. Her observation of the Van Ells picking up goods and inventory was also found. All this was supported by the testimony. With such support, the challenged finding will stand. *Seaway Shopping Center Corp.* v. *The Grand Union Stores, Inc.,* 132 Vt. 111, 117, 315 A.2d 483 (1974).

As the lower court indicated in its citation of *Ryan* v. *Orient Insurance Co.,* 96 Vt. 291, 119 A. 423 (1923), the action of malicious prosecution is not favored in the law. The burden is on the proponent of the action to establish malice, lack of probable cause and damages. *Masi* v. *Laferriere,* 131 Vt. 363, 365, 306 A.2d 701 (1973). The findings below reflect none of these elements, and all must be present.

Nevertheless, the defendants seek a second trial because the lower court, in its conclusions of law, also referred to the proposition in *St. Johnsbury & Lake Champlain R.R.* v. *Hunt,* 59 Vt. 294, 299, 7 A. 277 (1886), that malicious prosecution will not lie when the information complained of was filed in good faith on the advice of counsel. This, the defendants claim, was contradicted by the testimony in the case. It seems to be their position that any error established on account of

this conclusion of law will supply missing elements of the counterclaim. This, of course, is not so, and the *St. Johnsbury & Lake Champlain Railroad* case also points out on page 298 that the existence of malice will not support an action for malicious prosecution where probable cause for the lawsuit exists.

Also associated with this point is a claim of error based on the trial court's refusal to grant a motion of the defendants Van Ells for a mistrial. Presumably the motion was predicated on a claim of bias on the part of the trial judge, although this ground was never expressly advanced below.

The circumstances from which the mistrial motion of the Van Ells is claimed to be justified relate to a hearing in which the trial judge involved denied a petition of the plaintiffs to hold the Van Ells in contempt. So much for bias. It must be said, moreover, that nothing in the record discloses any basis for any claim of bias or unfairness on the part of the trial judge. Giving the evidence its strongest cast in favor of the Van Ells' claim, the trial judge is supposed to have made some comment to plaintiffs' attorney, in chambers, that he was seeking relief in the wrong court and if he thought things were being taken from the store to go to the criminal court. It is then claimed that in approaching the state's attorney for a warrant, the plaintiffs' attorney, as part of his approach, mentioned this remark of the judge to the prosecutor. The prosecutor said that this reported remark had an effect on the issuance of the arrest warrants for larceny upon which the malicious prosecution claim is based. It was also his testimony, however, that he felt he had ample probable cause without reference to the remark, and in a letter written about the case referring to his justification for the warrant he made no reference to the judge's comment being reported to, or influencing him.

These circumstances, as recited, even if assumed to be the facts, are not proof of bias. It is undoubtedly on that account that the defendants Van Ells made no such claim to this Court. Here the claimed error is based on the duty of the judge to disqualify himself because he might be a witness. The defendants never called upon the judge to take the stand or testify, never made him a witness, and never put their claim

to the test—all this in the face of the fact that they were several times told, in the midst of all this, by the presiding judge himself, that they could call as witnesses anybody they wished. In effect, the issue briefed as error here was never raised below, since the trial judge was never asked to testify. See *State* v. *Bissell*, 106 Vt. 80, 95, 170 A. 102 (1934). The defendants take nothing by this claim of error.

The original order filed in this case awarded damages to the plaintiffs in the amount of $2,000.00 plus costs. Within ten days of the entry the plaintiffs filed a motion requesting amendment of this order on the basis that the amount of damages as computed was inconsistent with the findings and conclusions of law. The court thereupon filed amended findings and a new order. No objection was taken to this procedure below, but the defendants Van Ells seek to challenge it here.

■ An examination of the original findings and order discloses that the plaintiffs are correct in their claim that the judgment order does not follow the findings as it must. *McGrath* v. *Haines*, 125 Vt. 49, 51, 209 A.2d 479 (1965). The provisions of V.R.C.P. 52(b) provide the mechanism for bringing this to the lower court's attention for correction, and were followed here.

■ The defendants claim the right to a hearing on this issue. However, they made no such request below, and the provisions of the rule do not require a hearing. A trial court is authorized, even of its own motion, to take such corrective action. *West* v. *West*, 131 Vt. 621, 623, 312 A.2d 920 (1973). No new evidence was taken; the trial court simply undertook to produce a final judgment that conformed to its view of the facts.

■ The defendants challenge this procedure further by an attack on the finding of $1,500 as the value of the inventory of the plaintiffs used up or lost to them during occupancy by the Van Ells. They take the position that this valuation can only be derived from the evidence by resort to certain exhibits, in the case for a more limited purpose. The evidence is quite clear that there was a signed agreement between the parties for the sale of inventory and antiques in the store for a total sum of $5,000. The court found in its original findings that

544

the antiques, which were returned to the plaintiffs, were worth $3,500. The value of $1,500 placed on the remaining unrecovered inventory is therefore already implicit in the original findings and is supported amply by that agreement and the evidence. There is no error.

*Judgment affirmed.*