## Craig Cook v. Thomas Nelson, et al.

[712 A.2d 382]

No. 97-054

Present: **Dooley, Morse and Johnson, JJ.**

Opinion Filed March 13, 1998

Motion for Reargument Denied April 7, 1998

*David F. Kelley*, Orleans, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, *Timothy B. Tomasi*, Assistant Attorney General, and *Cindy Maguire*, Special Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Dooley, J.** Plaintiff Craig Cook filed a malicious prosecution action against defendant state police officer Thomas Nelson, contending that defendant unjustifiably issued him a citation charging him with violating 13 V.S.A. § 4003 (carrying a firearm into a state institution). An Addison Superior Court jury returned a verdict in favor of plaintiff and awarded him $10,000 in damages. Finding that defendant was entitled to qualified immunity for the actions for which he was sued, the presiding judge set aside the verdict and granted defendant a judgment as a matter of law pursuant to V.R.C.P. 50(b). Plaintiff appeals this decision claiming that (1) qualified immunity is inapplicable because of the jury verdict against defendant; (2) qualified immunity is inapplicable because plaintiff's right to be free from prosecution was clearly established; (3) qualified immunity should not be available as a post-judgment defense; and (4) even if qualified immunity can be used as a post-judgment defense, the defense was waived because defendant did not request that the jury be provided with instructions or special interrogatories on the defense. In addition to defending the decision of the trial court, defendant argues that the tort of malicious prosecution does not apply because plaintiff was never prosecuted. We affirm without reaching the additional ground raised by defendant.

In January of 1993, plaintiff was involved in divorce and child custody proceedings with his estranged wife. Plaintiff believed that a Vermont State Police trooper in the Williston barracks had in his possession drug paraphernalia that had been confiscated from his wife during a police search of his home. Plaintiff hoped to use this evidence in the child custody proceeding to demonstrate that his wife was unfit to have custody. On January 17, 1993, plaintiff went to the Vermont State Police's Williston barracks to speak with the trooper about this evidence. He was informed that the trooper was unavailable but would be returning sometime after 5:00 p.m.

Plaintiff was a licensed armed security guard. On January 17, plaintiff was carrying a .40 caliber semi-automatic pistol and was wearing a bullet-proof vest. Two days earlier, after plaintiff attempted

to enter the Chittenden Family Court while carrying his gun, the presiding judge of that court had notified the Williston state police barracks that plaintiff had a gun.

When plaintiff returned to the Williston barracks on January 17, defendant met him and asked him whether he was carrying a gun. When plaintiff answered that he was, defendant and two other state police officers placed him under arrest for violating 13 V.S.A. § 4003. That statute provides:

> A person . . . who carries a dangerous or deadly weapon within any state institution . . . without the approval of the warden or superintendent of the institution, shall be imprisoned not more than two years or fined not more than $200.00, or both.

After plaintiff was placed in custody, defendant issued him a citation to appear in court to answer to the charge of carrying a dangerous weapon into a state institution and released him.

Defendant issued a press release stating that plaintiff was arrested and charged with carrying a deadly weapon within a state institution. The story was covered by the Burlington newspaper and on the television news. Shortly thereafter, plaintiff was fired from his job.

Defendant sent the Chittenden County state's attorney a memorandum in support of the criminal charge against plaintiff. In that memo, he stated that he had been part of the Vermont Governor's security detail and, as a result of an incident when a citizen brought a gun into the Governor's office, had identified 13 V.S.A. § 4003 as a statute that could be used in such a case. He argued that the state police barracks was an "institution" under the statute. He also argued that the State Buildings Department had the right to establish rules for the use of state buildings and had adopted a rule prohibiting the carrying of firearms on the property. He argued that plaintiff should be prosecuted because he had a history of threatening police officers and others. The state's attorney decided not to prosecute.

Plaintiff then brought suit in Addison Superior Court claiming (1) a violation of his federal civil rights actionable under 42 U.S.C. § 1983, (2) a violation of his rights under the Vermont Constitution, (3) assault and battery, (4) defamation, and (5) intentional infliction of emotional distress. By later amendment, he added claims for (6) false arrest, (7) false imprisonment, and (8) malicious prosecution. Defendant responded by raising various defenses, including the defense of absolute and qualified official immunity. The court granted summary

judgment to defendant on all counts except for assault and battery, false imprisonment and malicious prosecution. After a three-day trial, the jury found for plaintiff on the malicious prosecution claim and awarded damages in the amount of $10,000. Defendant moved for judgment as a matter of law at the close of plaintiff's case and after the verdict. The court granted the post-verdict motion based on the defense of qualified immunity.

In its decision, the trial court reasoned that defendant was protected by qualified official immunity if he acted in good faith. The court applied the objective test of good faith set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982), which provides that government officials performing discretionary functions are immune "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The court noted that immunity may apply even if the official is not legally correct and acted with ill will or malice. Although the court ruled that § 4003 did not apply to weapons in state police barracks, it held that the statute was sufficiently vague that a reasonable police officer would not know that it did not prohibit carrying a weapon in such a situation. Thus, it ruled that plaintiff's right to carry the weapon was not clearly established, and defendant's immunity was a complete defense to plaintiff's malicious prosecution claim. Accordingly, it granted defendant judgment as a matter of law, notwithstanding the jury verdict. This appeal followed.

■ Plaintiff attacks the trial court's qualified immunity ruling on a number of grounds. We start by summarizing the law of qualified immunity. Such immunity protects lower-level government employees from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority. See *Sabia v. Neville*, 165 Vt. 515, 520, 687 A.2d 469, 473 (1996). Even in applying qualified official immunity to state tort law claims, we use the federal objective good faith standard "to prevent exposing state employees to the distraction and expense of defending themselves in the courtroom." *Id.* at 521, 687 A.2d at 473. The outcome of the analysis depends on the objective reasonableness of the official's conduct in relation to settled, clearly-established law. See *id.*; *Murray v. White*, 155 Vt. 621, 630, 587 A.2d 975, 980 (1991). Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability.

As the trial court emphasized, it is possible that an official will act out of improper motives and, nevertheless, be protected from state tort claims by official immunity. Indeed, that is the case here because the jury found that defendant acted with malice to plaintiff in reaching its malicious prosecution verdict. Thus, plaintiff's first argument is that the jury's verdict of malice should govern and defendant should be liable because he acted with improper motives.

■ The short answer to plaintiff's argument is that we have already decided the issue against his position. We adopted the federal objective good faith test of qualified immunity in *Levinsky v. Diamond*, 151 Vt. 178, 190, 559 A.2d 1073, 1086 (1989) (*Levinsky II*). *Levinsky* was itself a malicious prosecution action in which an element of the tort was the malice of defendant. See *Levinsky v. Diamond*, 140 Vt. 595, 599-600, 442 A.2d 1277, 1280 (1982) (*Levinsky I*). Nevertheless, we applied the objective good faith analysis in holding that the actions of assistant attorneys general were protected by qualified official immunity. See *Levinsky II*, 151 Vt. at 190, 559 A.2d at 1086. Under *Levinsky II*, defendant in this case is entitled to immunity if he acted in *objective* good faith despite the jury's finding that he acted with malice to plaintiff.

We recognize that we have recently applied a contrary approach in *Rich v. Montpelier Supervisory Dist.*, 167 Vt. 415, 709 A.2d 501 (1998), a superficially similar case. In *Rich*, a teacher alleged that the superintendent's decision not to renew his teaching contract was made in retaliation for public comments the teacher made about certain school board decisions and, therefore, violated the teacher's First Amendment rights. The superintendent argued that his conduct was protected by qualified immunity under the objective good faith test. We disagreed because "defendant's motivation . . . is an essential element of plaintiff's claim that his constitutional rights were violated." *Id.* at 424, 709 A.2d at 507.

The motivation exception accepted in *Rich* is more narrow than that asserted by plaintiff here. In *Rich*, plaintiff could prevail if his protected speech "was a substantial or motivating factor in his dismissal," *id.* at 423, 709 A.2d at 505, and we found that there was enough evidence for plaintiff to reach the jury on that claim. See *id.* at 422, 709 A.2d at 506. We held that the qualified immunity analysis must, therefore, assume that defendant acted in retaliation for plaintiff's speech and that plaintiff's right not to be fired for that purpose was clearly established. As a result, qualified immunity could

not be used to end run the jury's determination of defendant's motive in firing plaintiff.

Plaintiff's position in this case would be like that of the plaintiff in *Rich* if *any* prosecution commenced for malicious purposes were tortious. The tort of malicious prosecution has, however, an additional element: that the prosecution be commenced without probable cause. See *Fay v. Van Ells*, 134 Vt. 536, 541, 367 A.2d 167, 171 (1976). This element does not involve defendant's motivation and is the element to which qualified immunity relates. Even if defendant's acts were maliciously motivated, we must judge for qualified immunity purposes whether a reasonable officer in the position of defendant would have known that plaintiff's action in bringing a gun into the barracks did not subject him to criminal liability. The trial court's conclusion that plaintiff's right to bring the gun into the barracks was not clearly established did not undermine the jury's finding that defendant acted maliciously. Instead, it went to probable cause, immunizing defendant from personal liability because his determination that there was probable cause to issue the citation, although erroneous, was objectively reasonable.

We decline plaintiff's argument to expand the rationale for *Rich* to reach this case. We have noted that the qualified immunity analysis for state tort claims is different from the analysis for civil rights claims under 42 U.S.C. § 1983. See *Levinsky II*, 151 Vt. at 192, 559 A.2d at 1083. The tort of malicious prosecution is not favored, see *Chittenden Trust Co. v. Marshall*, 146 Vt. 543, 549, 507 A.2d 965, 969 (1986); *Anello v. Vinci*, 142 Vt. 583, 587, 458 A.2d 1117, 1120 (1983), and we are reluctant to use it to chill legitimate law enforcement activities. Although the jury must find that defendant acted with malice, the malice is often implied, based on the finding of absence of probable cause. See *Chittenden Trust Co.*, 146 Vt. at 550, 507 A.2d at 970; *Barron v. Mason*, 31 Vt. 189, 198 (1858) (malice means "the want of sincere belief of the plaintiff's guilt of the crime for which the prosecution was instituted"); see generally Restatement (Second) of Torts § 668 (1977) (malice means "proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice"). We fully implement the purposes of qualified official immunity if we protect officers from liability based on reasonable determinations of probable cause even if they turn out to be erroneous.

Plaintiff next challenges the trial court's good faith analysis because it misidentified the right that must be clearly established

before defendant's immunity is overcome. The trial court identified the right as that of a citizen to enter a state police barracks with a gun in the face of 13 V.S.A. § 4003. Plaintiff argues that, instead, the rights involved are the right to bear arms and the right to be free from unreasonable search and seizure, and both of these rights are clearly established.

If the rights at issue can be stated as broadly as plaintiff urges, they will always be clearly established and qualified immunity will rarely apply. See *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). Moreover, broad statements of applicable rights do not implement the underlying policies of qualified immunity. Knowing that plaintiff has a right to bear arms ' or be free from unreasonable searches and seizures would not help a police officer to understand whether plaintiff can bring a concealed weapon into a police barracks. As we stated in *Murray*,

> [A] lack of good faith is not established by asserting that the right to be free from the torts alleged in plaintiff's complaint is clearly established. Rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law the unlawfulness must be apparent."

155 Vt. at 630, 587 A.2d at 980 (quoting *Anderson*, 483 U.S. at 640). Thus, the right involved must be specific to the circumstances. See *Billado v. Appel*, 165 Vt. 482, 487, 687 A.2d 84, 88 (1996).

■ The trial court correctly identified the right as that of plaintiff to bring a gun into the state police barracks. Plaintiff appears to concede that this right was not clearly established because of the presence of 13 V.S.A. § 4003. The criminal statute is subject to differing interpretations and has never been construed by this Court or the trial courts.

Plaintiff next argues that qualified immunity should not be available as a post-judgment defense, at least not where the jury did not find the underlying facts. In making this argument, plaintiff has relied on our holding in *Murray*, 155 Vt. at 626, 587 A.2d at 978, that qualified immunity is an immunity from suit, not a defense to liability. Thus, plaintiff argues qualified immunity must be raised and resolved pretrial or it is not available.

It is helpful to judge this argument in relation to the events in this case. Plaintiff initially filed a complaint claiming that defendant had

violated plaintiff's state and federal constitutional rights and committed the torts of intentional infliction of emotional distress, assault and battery, and defamation. Defendant answered, in part, that he was immune from liability on plaintiff's claims and moved for summary judgment on that basis, among others. The court dismissed most of the claims, but not the count for assault and battery, thereby ensuring that the case would go to trial. Thereafter, plaintiff amended his complaint to include the count of malicious prosecution. Although defendant raised qualified immunity in the answer to the amended complaint, he could not rely on qualified immunity to avoid discovery and trial.

As the events demonstrate, defendant did not waive pretrial resolution of the case based on qualified immunity. He vigorously pursued immunity until the court's ruling made clear that he would not avoid a trial. Plaintiff would have us rule that because of the trial court's initial decision, defendant lost immunity from trial and any defense to liability.

■ Although we have encouraged early resolution of immunity claims, and allowed interlocutory review to fully implement its purposes, nowhere have we suggested that official immunity is unavailable as a defense when pretrial resolution of the case is impossible. The original purpose of official immunity was to insulate certain officials from "civil liability." *Levinsky II*, 151 Vt. at 184, 559 A.2d at 1078. We note that the federal courts have generally allowed official immunity to be raised as a defense to liability at any stage of the proceeding. See *Krause v. Bennett*, 887 F.2d 362, 368 n.3 (2d Cir. 1989); *Alvarado v. Picur*, 859 F.2d 448, 451 n.3 (7th Cir. 1988); *Martin v. City of Eastlake*, 686 F. Supp. 620, 626-30 (N.D. Ohio 1988). We follow these decisions in allowing defendant to raise official immunity as a trial defense if the issue is not resolved prior to trial.

■ Finally, plaintiff argues that the claim of qualified immunity should have been submitted to the jury for their resolution or for special interrogatories to resolve the factual disputes. The court may grant a judgment as a matter of law against a party on an issue where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." V.R.C.P. 50(a) (Cum. Supp. 1997). If there is a reasonable dispute of fact bearing on the availability of qualified immunity, it must be resolved by the fact-finder, in this case the jury. See *Sabia*, 165 Vt. at 525, 687 A.2d at 475.

Because of the objective nature of the good faith test, it is often appropriate to resolve the applicability of qualified immunity as a

matter of law. This was such a case. The court's ruling assumed all facts as pled by plaintiff and disclosed by the evidence. The question of whether a reasonable officer would have recognized a clearly established right to bring the gun into the barracks, without criminal liability under 13 V.S.A. § 4003, was one of law that the court could resolve without factual determinations by the jury. There was no error in failing to submit qualified immunity to the jury.

*Affirmed.*