### Carol WINFIELD v. STATE of Vermont, et al.

[779 A.2d 649]

No. 99-524

June 8, 2001. Plaintiff Carol Winfield appeals from a superior court judgment dismissing her claims against defendants State of Vermont, Allen Elser, Roger Whitcomb, John Klauzenberg, Richard Hislop and Robert Rook for failure to state a claim upon which relief can be granted under V.R.C.P. 12(b)(6). Plaintiff contends the court erred in determining that: (1) tort claims against the individual

defendants were barred by the doctrine of official immunity; (2) tort claims against the State were barred by the doctrine of sovereign immunity; and (3) claims for monetary damages and declaratory relief premised on violations of the Vermont Constitution were barred by the availability of adequate alternative remedies. We affirm.

Since it is here on dismissal, the factual circumstances are those well pleaded in the original complaint. See *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999) (for purposes of reviewing motion to dismiss, we accept as true all well pleaded allegations in complaint). In 1992, the Commissioner of the Department of Fish and Wildlife issued a permit to plaintiff to serve as a wildlife rehabilitator. See 10 V.S.A. § 5215(b) (authorizing commissioner to "issue a permit to a person, organization or group for the purpose of rehabilitating sick or injured wild animals"). Plaintiff was known at the time as a vocal critic of the Department.

In 1993, fish and wildlife warden Klauzenberg secretly tape-recorded a telephone conversation between plaintiff and a third party, with the third party's cooperation, and wrote a report containing defamatory remarks about plaintiff based on the recorded conversation. Later the same year, plaintiff obtained verbal permission from Major Roger Whitcomb of the Department to provide an injured animal to Susan Morse, as plaintiff's subpermittee, to prepare the animal for release to the wild. Warden Hislop subsequently issued a written warning to plaintiff for entrusting the animal to Morse, purposely omitting plaintiff's defense that she had received permission.

In 1994, plaintiff reported to Major Whitcomb's secretary that she was having difficulty filing Department paperwork each month. The secretary told her that it was acceptable not to file

reports immediately, as Whitcomb did not examine them until later.

In 1997, the Department received an anonymous report that a baby otter had been brought to the office of a physician who was one of plaintiff's subpermittees. In response, warden Rooks arranged to have an undercover federal officer visit the physician's office. The federal agent was shown the otter in the physician's private office. Rooks reported the incident to Whitcomb and the Commissioner, who directed the Department's lawyer to send plaintiff a letter. The letter, dated August 18, 1997, notified plaintiff that her wildlife rehabilitation permit was under review, and that until further notice she was not "to accept or obtain any animals not currently in [plaintiff's] possession." The letter noted that plaintiff currently possessed a river otter that had not been reported to the Department and cited Department policies governing the disposition of animals. Finally, the letter advised plaintiff that no additional subpermittees would be approved during the review period.

In response to the letter, plaintiff called a supervising lawyer for the Agency of Natural Resources, who called her back the same day. The lawyer told plaintiff that her license was not suspended, and informed her that a hearing would be held prior to any suspension. In September 1997, the Department sent a letter to plaintiff's counsel setting forth charges that she had violated Department regulations by placing the otter on public display and had failed to submit timely reports. Thereafter, plaintiff and the Department resolved the dispute by entering into a settlement agreement. Following the agreement, according to plaintiff's complaint, the Department continued to subject plaintiff to discriminatory treatment, "including failure to answer routine inquiries, and refusal or extraordinary delay in granting otherwise routine approvals."

In August 1998, plaintiff filed this action against the State and individual defendants, alleging a variety of tort claims, including intentional infliction of emotional distress, abuse of process and malicious prosecution.[1] She also alleged due process and free speech violations of the United States Constitution and 42 U.S.C. § 1983 and similar infringements of the Vermont Constitution. The individual defendants removed the case to federal district court and thereafter moved to dismiss for failure to state a claim. The district court granted the motion with respect to the § 1983 claims. The court assumed for purposes of analysis that the wildlife rehabilitation license constituted a protected property interest under the due process clause, but concluded that there had been no license revocation or suspension and therefore no compensable deprivation. The court also found no violation of a property right resulting from the exercise of plaintiff's First Amendment rights. Accordingly, the federal court dismissed the § 1983 claims and remanded the matter to the superior court for consideration of the remaining state claims.

The State thereupon moved to dismiss for failure to state a claim, arguing that the government officials were entitled to qualified immunity; the Commissioner was entitled to absolute immunity; the action against the State was barred by the doctrine of sovereign immunity; the provisions of the Vermont Constitution relied on by plaintiff provided no private right of action; and some of the claims were barred by the statute of limitations. The trial court granted the motion. This appeal followed.

---

[1] The complaint expressly omitted Commissioner Elser from any state tort claims.

## I.

Plaintiff first contends the court erred in dismissing her tort claims against the individual defendants on the basis of qualified immunity and against the State on the basis of sovereign immunity. The standards of review are well established. A motion to dismiss for failure to state a claim should not be granted unless there exist no facts or circumstances that would entitle the plaintiff to relief. See *Richards*, 169 Vt. at 48, 726 A.2d at 85. In reviewing the trial court's disposition of a motion to dismiss, we assume that all well pleaded factual allegations in the complaint are true, as well as all reasonable inferences that may be derived therefrom. See *id.* at 48-49, 726 A.2d at 85.

We recently summarized the law of qualified immunity as follows:

> Such immunity protects lower-level government employees from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority. See *Sabia v. Neville*, 165 Vt. 515, 520, 687 A.2d 469, 473 (1996). Even in applying qualified official immunity to state tort law claims, we use the federal objective good faith standard "to prevent exposing state employees to the distraction and expense of defending themselves in the courtroom." *Id.* at 521, 687 A.2d at 473. The outcome of the analysis depends on the objective reasonableness of the official's conduct in relation to settled, clearly-established law. See *id.*; *Murray v. White*, 155 Vt. 621, 630, 587 A.2d 975, 980 (1991). Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability.

*Cook v. Nelson*, 167 Vt. 505, 509, 712 A.2d 382, 384 (1998).

Assessed in light of these standards, the trial court's ruling on the issue of qualified immunity was sound. The essence of the claim against warden Klauzenberg was that he secretly tape-recorded a telephone conversation between plaintiff and a third party, with the third-party's cooperation, and then "wrote a report with defamatory comments about [plaintiff] based on the tape-recorded conversation." The trial court correctly noted that the tape recording did not violate federal or state law, see 18 U.S.C. § 2511(2)(c), and plaintiff has not challenged this ruling on appeal. Rather, she contends that the duty not to issue false reports is a "ministerial" function and therefore outside the scope of any qualified immunity.[2] We agree with the trial court, however, that the game warden's decision to issue an investigative report concerning plaintiff's activities was based upon his evaluation of her performance as a wildlife rehabilitator and whether it was consistent with statutes, regulations, and Department policy. Thus, whether the report was accurate or not, we conclude that its issuance fell within the scope of the warden's discretionary duties. See *Johnson v. State*, 165 Vt. 588, 590, 682 A.2d 961, 964 (1996) (mem.) (housing inspector's decision to issue lodging license based upon subjective, albeit "unwise," evaluation of compliance with health requirements was discretionary

---

[2] Plaintiff has framed the issue as whether the issuance of an accurate investigative report is a ministerial or discretionary act, not as whether the officer may be said to have acted in "good faith" in allegedly issuing a knowingly false report. Accordingly, we do not address the latter question.

act subject to qualified immunity); *Hudson v. Town of East Montpelier*, 161 Vt. 168, 171-75, 638 A.2d 561; 563-66 (1993) (noting that ministerial/discretionary distinction is not subject to formulaic definition, but must be determined on case by case basis in light of policy of encouraging public employees to discharge their duties and exercise their independent judgment); *LaShay v. Department of Soc. & Rehab. Servs.*, 160 Vt. 60, 65, 625 A.2d 224, 227 (1993) (discretionary duty requires "judgment in performance").

The gist of the complaint against warden. Hislop was that he issued a written warning to plaintiff concerning her use of Morse to rehabilitate an injured animal and "purposely omitted [plaintiff's] defense, that she had in fact obtained Department permission." The complaint also alleged that Hislop had wrongfully omitted from the warning "any rights of appeal." Again, however, we agree with the trial court's conclusion that the warden's decision to issue a warning for violation of Department regulations was well within the scope of his discretionary duties, and that — measured by an objective test — omitting a description of plaintiff's "defense" to the charge and notice of a right to appeal were not evidence of a lack of good faith, i.e., noncompliance with "clearly-established rights of which a reasonable person would have known." *Nelson*, 167 Vt. at 509, 712 A.2d at 384.

As to warden Rooks and Major Whitcomb, the complaint alleged that they had participated. in gathering evidence and formulating charges of misconduct which resulted in the letter from Department counsel suspending plaintiff's license without notice of her right to a hearing or notice of the specific charges of misconduct. Plaintiff argues that the decision to suspend her license without providing notice of her right to a hearing and without providing specific notice of the charges violated ministerial duties

and was objectively unreasonable. Nothing in the letter to plaintiff, however, indicates that her license was suspended or terminated. Indeed, plaintiff's complaint expressly acknowledged that she contacted Agency counsel, who promptly informed her that she should disregard the letter, and that any suspension would be preceded by a hearing. Absent any suspension, we discern no basis for the claims against Rooks or Whitcomb.

Plaintiff's claims against the State are derivative of the tort claims against the individual defendants. Since we have held that the conduct complained of was within the.scope of the individual defendants' discretionary duties, or simply failed to violate any established rights to which plaintiff was entitled, we discern no basis for the claims against the State. See 12 V.S.A. § 5601(e)(1) (state not liable for tort claims arising out of state employee's exercise of, or failure to exercise, discretionary duties); *Hudson*, 161 Vt. at 173-74 n.1, 638 A.2d at 565 n.1 (noting that although some courts have held that discretion in context of official immunity is broader than discretionary function exception to sovereign immunity, rationale of doctrine is same).

## II.

Plaintiff next challenges the trial court's dismissal of her claims against defendants premised on the Vermont Constitution. Plaintiff alleged that the Department retaliated against her for public criticism of the Department in violation of her free speech rights under Article 13. She also claimed that the Department violated her due process rights under Article 10 by suspending her license and failing to promptly inform her of the nature of the charges and the right to a hearing.

The trial court determined that although the articles in question were self-executing, the existence of an adequate administrative remedy pre-

cluded a claim for monetary damages based directly on the Constitution. See *Shields v. Gerhart*, 163 Vt. 219, 222-28, 658 A.2d 924, 927-30 (1995) (whether damages are available for violation of state constitution involves two-step inquiry, requiring determination as to whether provisions are self-executing, and, if so, whether adequate alternative remedy nevertheless counsels against recognition of private claim). The trial court noted, in this regard, that plaintiff had already effectively availed herself of administrative relief by contacting the Agency and receiving prompt assurance that she was not suspended and that any discipline would be preceded by a hearing. One month later, plaintiff was formally notified of the misconduct charges and eventually entered into a settlement agreement with the Department.

We agree that plaintiff was not entitled to damages under the Constitution, although for reasons even more basic than those cited by the trial court. See *Harris v. Town of Waltham*, 158 Vt. 477, 479-80 n.1, 613 A.2d 696, 697-98 n.1 (1992) (Court often affirms rulings on grounds different from trial court). Assuming, without deciding, that a license to assist without compensation in the rehabilitation of sick or injured animals represents a protectable interest under the Constitution, and that monetary damages are available for an infringement of such an interest, the evidence here nevertheless failed to demonstrate any appreciable deprivation to plaintiff. The Department's letter merely informed plaintiff that her permit was "under review," directed that she not "obtain any animals not currently in [her] possession," and advised that additional subpermittees would not be approved during the review period.

Nothing contained in the letter purported to terminate — or threatened to terminate — plaintiff's permit, and she was informed by the Agency's counsel that her license was not suspended. As for the restrictions on plaintiff's ability to take in additional animals or appoint subpermittees during the review process, the regulations governing wildlife rehabilitators broadly authorize the Commissioner to impose conditions upon a license. We thus perceive no compensable loss to plaintiff as a result of these temporary measures. Nor do we perceive any deprivation, or any violation of due process, resulting from plaintiff's being informed that her permit was "under review." A preliminary warning of this nature does not, in our view, trigger the due process obligations of notice of the charges and the right to a hearing. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (due process requires that public employees receive notice of charges and opportunity for hearing in advance of termination); *In re Towle*, 164 Vt. 145, 153, 665 A.2d 55, 61 (1995) (same).

Nor are plaintiff's allegations of continuing discrimination adequate to support a claim for relief. The complaint alleged that since the settlement agreement, the Department had "subjected [her] to discriminatory treatment, including failure to answer routine inquiries, and refusal or extraordinary delay in granting otherwise routine approvals." The bare allegation of "discriminatory treatment" is insufficient to state a claim for relief, see *In re American Express Co.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994), and the Department's failure to answer "routine inquiries" and delays in granting "routine approvals" do not amount to a deprivation of a protected interest sufficient to establish "retaliation" or to trigger due process safeguards. See *Goss v. Lopez*, 419 U.S. 565, 576 (1975) (interests that can be characterized as de minimis are beyond scope of due process clause); *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 530 (7th Cir. 2000) (loss of "professional satisfaction"

and other nonpecuniary dignitary interests resulting from transfer of school principal did not constitute compensable loss under due process clause); *Pitts v. Board of Educ.*, 869 F.2d 555, 556 (10th Cir. 1989) (two day suspension with pay did not deprive teacher of compensable property interest).

Finally, we agree with the trial court's conclusion that, absent any basis for an award of monetary damages or claim for injunctive relief under the Vermont Constitution, there is no basis for a declaratory judgment action premised on the same factual allegations. Cf. *All Cycle, Inc. v. Chittenden Solid Waste Dist.*, 164 Vt. 428, 434-35, 670 A.2d 800, 804 (1995) (request for declaratory relief not mooted where declaration of constitutionality of government conduct was predicate to award of damages in § 1983 claim).

*Affirmed.*