VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-02816



Execusuite, LLC
     Plaintiff

v.

Mitchel Cable, Eric Clifford,
Karl Ebbighausen, and Joshua Reyes
     Defendants

Decision on Defendants' Motion for Summary Judgment

Plaintiff Execusuite, LLC is the owner and landlord of a multi-family residential property in White River Junction, Vermont. In this § 1983 action, plaintiff alleges that defendants (four law-enforcement officers) violated its constitutional rights by wrongfully intervening in a landlord-tenant dispute between plaintiff and one of its tenants. Defendants have moved for summary judgment, arguing that, after an adequate period for discovery, plaintiff has not adduced sufficient evidence to establish a genuine issue for trial. *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The following facts are established by the parties' statements of material facts, and are set forth in the light most favorable to plaintiff as the non-moving party. *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272. In March 2019, plaintiff rented an apartment to tenant Robert McFadden. After Mr. McFadden's lease expired twelve months later, he remained in possession of the apartment as a holdover tenant, but he stopped paying rent. Plaintiff served upon Mr. McFadden a notice that his tenancy would be terminated on July 31, 2020.

Shortly after receiving the notice, on June 7, 2020, Mr. McFadden removed all of his furniture and furnishings from the apartment, but left behind about two carloads of miscellaneous items. Plaintiff thereafter sent multiple emails to Mr. McFadden, asking him to clarify his intentions. He responded on June 10th and June 11th that he would move out either soon, or at least by July 31, 2020, the date stated in the termination notice.

Nevertheless, by June 12, 2020, plaintiff's agents had begun entering the apartment to clean it, paint it, and change the locks. Mr. McFadden became aware of this and objected that he had not yet "turned in [his] key." He reiterated that he would move out by the date stated in the termination notice.

Plaintiff then rented the apartment to somebody else, with a move-in date of July 1, 2020. On June 23, 2020, several of plaintiff's agents entered the apartment and removed Mr. McFadden's remaining personal belongings. Plaintiff's agents moved Mr. McFadden's belongings to a different storage-unit location.

On June 29, 2020, Mr. McFadden returned to the apartment and found that the locks had been changed. He demanded entry from plaintiff's agent, and called police. Defendants Mitchel Cable and Karl Ebbighausen responded to the scene as law-enforcement officers for the Hartford Police Department. After listening to both sides, defendants told plaintiff's agent that Mr. McFadden still had a right of possession to the apartment, and that Mr. McFadden should be permitted to resume possession. Mr. McFadden thereafter moved his personal belongings back from the storage unit into the apartment. He then left.

Plaintiff's agent then promptly removed Mr. McFadden's property from the apartment, moved it back to the storage-unit location, and changed the locks again.

Mr. McFadden then returned to the apartment that same afternoon. He found that the locks had been changed. He called police. Defendants Eric Clifford and Joshua Reyes responded to the scene as law-enforcement officers for the Hartford Police Department. After listening to both sides, defendants again told plaintiff's agent that Mr. McFadden still had a right of possession to the apartment, and that Mr. McFadden should be permitted to resume possession. Mr. McFadden thereafter moved his personal belongings back from the storage unit into the apartment. He then left.

On July 4, 2020, the new tenant began moving into the apartment. She discovered Mr. McFadden's property inside the apartment. She called police. Defendants Cable, Clifford, and Ebbighausen responded to the call as law-enforcement officers for the Hartford Police Department and told the new tenant that Mr. McFadden was still in possession of the apartment. The new tenant packed up her belongings and left. Defendants then spoke with one of plaintiff's agents and told them that advertising the apartment as available during the month of July could constitute the criminal offense of false advertising.

As a result of these interactions, no one lived at the apartment during the month of July, but plaintiff charged double rent. Plaintiff charged Mr. McFadden rent for the month, and his belongings remained there. Plaintiff also charged the new tenant rent for the month, and kept her security deposit, and charged her an additional "lease buyout fee." Plaintiff rented the apartment to somebody else beginning on August 1, 2020.

In this § 1983 action, plaintiff's theory is that Mr. McFadden abandoned the apartment on June 7, 2020 when he removed his furniture and furnishings from the apartment and left behind two carloads of personal items. Plaintiff contends that defendants thereafter wrongfully deprived plaintiff of possession of the apartment by allowing Mr. McFadden to continue using the apartment, by telling the new tenant that someone else was still living there, and by telling plaintiff that advertising the apartment as available for rent during the month of July 2020 could constitute the criminal offense of false advertising.

Each of plaintiff's contentions rests upon whether it is accurate that Mr. McFadden abandoned the apartment on June 7, 2020.

Pursuant to Vermont law:

> (a) A tenant has abandoned a dwelling unit if:
>
> > (1) there are circumstances that would lead a reasonable person to believe that the dwelling unit is no longer occupied as a full-time residence;
> >
> > (2) rent is not current; and
> >
> > (3) the landlord has made reasonable efforts to ascertain the tenant's intentions.

9 V.S.A. § 4462.

As a general matter, § 4462(a) is an abandonment statute, and it is one of three ways in which the right of possession can be transferred between landlords and tenants. The most common method occurs when landlords and tenants simply agree upon the day on which the tenant will turn over the keys to the landlord. The second method occurs when a landlord files a complaint for ejectment and obtains a writ of possession—i.e., a court order that demarcates the date on which the tenant is evicted from the premises and the landlord is restored to possession, regardless of whether the tenant agrees to that date. The third method is abandonment, and it occurs when the tenant leaves the premises, and has stopped paying rent, and has not responded to the landlord's reasonable efforts to ascertain the tenant's intentions. The idea of the abandonment statute is that, in the absence of any communications from a tenant who has left and stopped paying rent, the landlord may retake possession when the available evidence supports an inference that the tenant has agreed to leave.

Another way of expressing the same idea is that the right of possession can be transferred from the tenant to the landlord when: (1) the tenant agrees that the landlord may retake possession, (2) the tenant disagrees, but a court has restored the landlord to possession through a writ of possession, or (3) the tenant neither expressly agrees nor disagrees, but the circumstances show that the tenant has abandoned the premises. There is not a variation in which the tenant disagrees that a landlord may retake possession, but the circumstances show that the tenant has abandoned the premises.

This explication is consistent with the general rules regarding abandonment of property. An abandonment is a "voluntary relinquishment of a known right," and a critical element of abandonment is that the person intends to abandon their property. *Prue v. Royer*, 2013 VT 12, ¶¶ 44–45, 193 Vt. 267 (internal quotations omitted). In other words, abandonment of a rental property is a form of constructive agreement: the tenant expresses through their actions, rather than their words, that the landlord may recover possession of the premises. 49 Am. Jur. 2d *Landlord & Tenant* § 215.

It is fundamentally inconsistent to say that a tenant has "voluntarily relinquish[ed]" a rental property if the tenant expressly asserts a desire to continue possessing the property. It is also fundamentally inconsistent to say that a tenant has constructively agreed that a landlord may recover a rental property if the tenant expressly disagrees with that notion. The applicable rule is simple: if a tenant asserts a continued right of possession, and there is no writ, a landlord is not entitled to retake possession under an inference of abandonment, nor engage in any other form of self-help. Instead, the

23-CV-02816 Execusuite, LLC v. Mitchel Cable et al

landlord must either negotiate with the tenant for a move-out date, or seek a writ of possession from the court.* See 9 V.S.A. § 4463(b) ("No landlord may directly or indirectly deny a tenant access to and possession of the tenant's rented or leased premises, except through proper judicial process.").

Here, the undisputed facts show that Mr. McFadden stopped occupying the apartment as a full-time residence, and stopped paying rent, but expressed on at least five occasions that he intended to continue possessing the unit. He expressed on June 10th and 11th that he intended to move out soon, but had not yet done so. He objected on June 12th to the entry of plaintiff's agents into his apartment, explaining that he had not yet turned in his key. He expressed twice on June 29th that he had not moved out, and he acted twice to move his personal belongings back into the apartment. In other words, although Mr. McFadden stopped living at the apartment, this is not a case where he disappeared, and did not respond to the landlord's reasonable efforts to ascertain his intentions. He responded to the landlord's inquiries, and he repeatedly expressed an intention to remain in possession. No finding of a "voluntary relinquishment" of the apartment is possible on these facts.

In this § 1983 action, the specific question is whether defendants "violate[d] clearly-established rights of which a reasonable person would have known" when they resolved the landlord-tenant disputes to which they responded on June 29th by allowing Mr. McFadden to remain in possession of the apartment. *Cook v. Nelson,* 167 Vt. 505, 509–10 (1998). For the foregoing reasons, the court concludes as a matter of law that defendants were correct, and that plaintiff was not entitled to retake possession of the apartment at those times under a theory of abandonment. At a minimum, defendants acted in good faith when they concluded that the tenant should remain in possession, at least until either the parties reached an agreement between themselves or a court issued a writ of possession.

As such, plaintiff has failed to show a genuine issue for trial on the claim that defendants violated plaintiff's constitutional rights by (1) allowing Mr. McFadden to continue using the apartment, (2) telling the new tenant that someone else was still in possession of the apartment, and (3) telling plaintiff that it would be wrong to continue advertising the apartment as available for rent during the month of July 2020. Defendants' Motion for Summary Judgment (Motion 1), filed June 28, 2024, is granted. A separate judgment order shall issue.

Electronically signed on Tuesday, February 18, 2025 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 02/25/25
Windsor Unit

---

* In this particular case, there was a moratorium on evictions at the time of the dispute, on account of the pandemic. See 2020, Act No. 101, § 1, eff. May 14, 2020.