2005 VT 40

**Koshen Henri CZECHOROWSKI v. STATE of Vermont, et al.**

[872 A.2d 883]

No. 03-086

¶ 1. March 22, 2005. Plaintiff Koshen Czechorowski appeals from a summary judgment dismissing his tort claims against the State of Vermont and Dena Monahan, an attorney for the Department of Aging and Disabilities. Plaintiff contends the court erred holding that the claims were barred on the basis of sovereign and official immunity. We affirm in

part, reverse in part, and remand for further proceedings.

¶ 2. The material facts may be summarized as follows. Plaintiff served as a care giver and painting instructor for L.B., an adult male diagnosed as mentally retarded, schizophrenic, and autistic. L.B. is unable to verbalize more than a few words at a time, but in 1996, through a technique known as "facilitated communication" (FC), L.B. alleged that plaintiff had raped and sexually abused him.[1] The allegations were reported to the Department of Aging and Disabilities, which launched an immediate investigation. See 33 V.S.A. § 6906 (Commissioner shall cause an investigation to commence within forty-eight hours of report of abuse).

¶ 3. After completing the interviews and site visits prescribed by statute, the Department investigator, Jody Blinn, initially recommended that the report of abuse be found unsubstantiated. See id. § 6906(c) (upon completion of investigation, written report "recommending a finding of substantiated or unsubstantiated" shall be submitted to Commissioner). Although a copy of Blinn's initial report was not produced, she acknowledged in her discovery responses that

she had initially recommended a finding that the alleged abuse was unsubstantiated, having concluded that the information obtained during the investigation was inconclusive. She based that opinion on certain inconsistencies in L.B.'s statements, the lack of physical evidence of rape from a medical exam conducted shortly after the allegations surfaced, plaintiff's positive history as a foster parent, and concerns about L.B.'s credibility due to a prior incident involving similar allegations against another individual which, after investigation, had been found to be unsubstantiated. Blinn admitted, however, that her supervisor had instructed her to rewrite the report to find that the allegation was substantiated.

¶ 4. Blinn's revised report of February 25, 1997, omitted reference to the specific exculpatory factors cited above, except for a description of plaintiff's positive history as a foster parent. In addition, the revised report emphasized the inculpatory evidence and the consistencies among the incriminating facts. While omitting, for example, reference to certain inconsistencies in two of the six FC sessions, the revised report noted the consistencies among the other four FC sessions where L.B. described the alleged assaults. In another example, the report summarized the report of the medical doctor, Dr. Brown, who had examined L.B., stating that according to his medical examination, the doctor believed there was evidence "that L.B. was sexually abused." The revised report did not specifically state, however, that Dr. Brown found no physical evidence of abuse, but rather based his conclusions on "eye contact" and L.B.'s "direct response to the examiners [sic] questions."

¶ 5. The Department notified plaintiff that it intended to substantiate the allegation of abuse and provided him with a copy of the revised report. Plaintiff, in response, requested an administrative

---

[1] In FC, a facilitator holds a disabled person's arm or hand over a keyboard and enables the disabled person to "communicate" by spelling out words. The parties disputed the validity of FC. Plaintiff presented an expert's affidavit stating that FC has been discredited and that clinical research shows that the content of FC is, "without exception," determined by the facilitator, either consciously or subconsciously. Defendant Monahan agreed, for the purpose of her summary judgment motion, that the validity of FC was an issue about which the experts in the field disagreed.

hearing before the Commissioner. See 33 V.S.A. § 6906(c) (if recommendation of investigative report is for finding of substantiation, person may request hearing before Commissioner to dispute recommendation). The Department's general counsel, defendant Dena Monahan, then reviewed the report and supporting documents in preparation for the Commissioner's hearing.

¶ 6. Following the administrative hearing, Monahan discussed the case with the Commissioner, and prepared a draft decision at his request. The final decision, signed by the Commissioner on June 13, 1997, substantiated the report that plaintiff had sexually abused L.B. Plaintiff appealed that decision to the Human Services Board. See *id.* § 6906(d) (within thirty days of notice that report has been substantiated, person may apply to Board for relief on ground that it is unsubstantiated, and Board shall hold a fair hearing under 3 V.S.A. § 3091). Plaintiff requested additional discovery prior to the Board hearing. Monahan, in response, declined to disclose the records of any complaints made by L.B. against other care providers on the basis of confidentiality, but complied with the hearing officer's order to produce Dr. Brown's medical report and lab results and Jody Blinn's case notes and other evidence.

¶ 7. The parties disputed L.B.'s competence to testify and the admissibility of his prior FC statements. Monahan attempted to demonstrate L.B.'s ability to communicate via FC at the fair hearing. All parties agreed that the demonstration was a failure, and the proceedings were continued. Shortly thereafter, Monahan informed the Board that the Department had decided to withdraw the substantiated-abuse finding. The Board later granted — over the Department's opposition — plaintiff's motion to reverse the Department decision and destroy the Department's records pursuant to

33 V.S.A. § 6906(e), (g).[2] The State did not appeal this decision.

¶ 8. Plaintiff subsequently filed this civil suit against the State, the Department's investigator Jody Blinn, the Department's general counsel and prosecuting attorney Dena Monahan, and five other parties, including L.B.'s doctor and other care givers. The claims against Blinn and Monahan alleged malicious prosecution and intentional and reckless infliction of emotional distress. The claim against the State alleged liability for Blinn and Monahan's acts and omissions under the Vermont Tort Claims Act. See 12 V.S.A. § 5601(a) (establishing state liability for negligent or wrongful acts or omissions of state employees made within scope of their employment). On cross-motions for summary judgment, the trial court dismissed all of plaintiff's claims, holding that: (1) the State had sovereign immunity; (2) Blinn had qualified immunity; and (3) Monahan had absolute immunity. Monahan, the court concluded, had "acted in a manner analogous to that of a public prosecutor" and therefore was absolutely immune from suit for "all her actions before the Commissioner, her in-court conduct [before the Board], and her reliance on Ms. Blinn's investigation report." Plaintiff settled out of court with the other defendants. The claims against Blinn were apparently discharged in bankruptcy

---

[2] At the time of the Board's decision, the statute directed the Department to destroy records of unsubstantiated reports within ninety days. See 33 V.S.A. § 6906(e), (g) (1998). In 2002, those provisions were amended to require the Department to keep such records confidential for six years, and to destroy them thereafter so long as no court proceeding is brought pursuant to § 6906(c). See 2001, No. 135 (Adj. Sess.), § 5.

without final resolution. Plaintiff's appeal is thus limited to the decision in favor of the State and Monahan.

¶ 9. In reviewing a summary judgment, we use "the same standard as the trial court, and affirm the granting of a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 313, 779 A.2d 67, 70 (2001) (quotations omitted). In applying this standard, we regard as true all allegations of the nonmoving party supported by admissible evidence and afford the nonmoving party the benefit of all reasonable doubts and inferences. *King v. Gorczyk*, 2003 VT 34, ¶ 7, 175 Vt. 220, 825 A.2d 16.

¶ 10. Plaintiff contends the trial court erred by extending the doctrine of official immunity to Monahan's actions during the proceedings before the Commissioner and the Board. Vermont law recognizes two levels of immunity for the official acts and omissions of public employees: absolute immunity and qualified immunity. *LaShay v. Dep't of Social & Rehab. Servs.*, 160 Vt. 60, 64, 625 A.2d 224, 226-27 (1993). Absolute immunity protects judges and the state's highest executive officers, including prosecutors, from civil suits for certain actions "closely associated" with their judicial or prosecutorial activities, including — among other things — the decision whether to prosecute and the prosecution of the action. *Muzzy v. State*, 155 Vt. 279, 280, 583 A.2d 82, 83 (1990). Qualified immunity applies to prosecutorial functions outside the area of advocacy, such as investigation or administration, as well as the conduct of lower level public officials so long as they are: "(1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to

ministerial, acts." *Murray v. White*, 155 Vt. 621, 626-27, 587 A.2d 975, 978 (1991); accord *LaShay*, 160 Vt. at 65, 625 A.2d at 227.

¶ 11. In Vermont, as nationally, "[m]ost public officials are entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993); accord *LaShay*, 160 Vt. at 64-65, 625 A.2d at 227 (absolute immunity applies only to judges, legislators, and the state's highest executive officers). "In most cases, qualified immunity is sufficient to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Buckley*, 509 U.S. at 268 (quotations omitted). Indeed, except for those special situations where absolute immunity is essential for the conduct of public business, any protection greater than qualified immunity "would seriously erode the protection provided by basic constitutional guarantees" and violate the principle that "'[n]o man in this country is so high that he is above the law.'" *Butz v. Economou*, 438 U.S. 478, 505-06 (1978) (quoting *United States v. Lee*, 106 U.S. 196, 220 (1882)).

¶ 12. In determining whether qualified immunity applies to protect a particular public function or official, we are guided principally by "the purposes behind" the doctrine. *Hudson v. Town of East Montpelier*, 161 Vt. 168, 172, 638 A.2d 561, 564 (1993). As we explained in *Hudson*, qualified immunity serves to protect government employees from exposure to personal tort liability that would: "(1) hamper or deter those employees from vigorously discharging their duties in a prompt and decisive manner, and (2) unfairly subject employees who have a duty to exercise discretion regarding matters of public policy to the judgment of those acting within a judicial system that is ill-suited to assess the full scope of factors involved in such decisionmaking." *Id.*

¶ 13. In light of these decisions, we conclude that Monahan is entitled to qualified immunity for her conduct as general counsel to the Department. As Monahan explained in her affidavit in support of the motion for summary judgment, it was her practice as general counsel to review the investigator's report and supporting documents when an accused person applied to the Commissioner for review of a substantiated report of abuse. Only if the Commissioner affirmed the report and the person appealed to the Board did Monahan then "assume the duties of a public prosecutor" and engage in the kinds of functions closely associated with that role. These included, as she stated, "respond[ing] to any discovery requests," "prepar[ing] and submit[ing] legal memoranda," "determin[ing] what evidence to rely on at hearing," "prepar[ing] the witnesses to testify," "represent[ing] DAD at any required hearings," and ultimately "determin[ing] whether to proceed with or discontinue a particular case." Thus, before plaintiff appealed to the Board, Monahan's activities as general counsel to the Department — consulting with the Commissioner, rendering advice, and drafting the decision — were not strictly prosecutorial in function, and therefore were not entitled to absolute immunity. They were, however, functions that unquestionably required the exercise of discretion and judgment concerning important issues before the Department, and therefore were well within the protection of the qualified immunity doctrine. *Id.*

¶ 14. Nor is there any question that, in her role as public advocate defending appeals before the Board, Monahan's functions were closely analogous to those of a government prosecutor and therefore were entitled to absolute immunity. Indeed, both state and federal courts have held that government attorneys engaged in civil enforcement actions are analogous to criminal prosecutors, and therefore are equally entitled to absolute immunity. The seminal decision in this area is *Butz*, where the United States Supreme Court held that a Department of Agriculture attorney who had initiated and pursued an enforcement action to revoke the registration of a commodity futures commission merchant was entitled to absolute immunity in a later damage action. 438 U.S. at 512-17. As the high court explained, "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution," and is equally likely to be "distorted if their immunity from damages arising from that decision was less than complete." *Id.* at 515.

¶ 15. Subsequent state and federal decisions have applied similar reasoning to shield government attorneys in a variety of civil contexts. See, e.g., *Gray v. Poole*, 243 F.3d 572, 574 (D.C. Cir. 2001) (attorneys from District of Columbia corporation counsel's office enjoy absolute immunity from liability for conduct in initiating and prosecuting child neglect action); *Romano v. Bible*, 169 F.3d 1182, 1187-88 (9th Cir. 1999) (attorney general absolutely immune for prosecuting claims before the California state gaming commission); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691-92 (7th Cir. 1995) (prosecuting attorney entitled to absolute immunity for bringing civil forfeiture action); *Zar v. S.D. Bd. of Exam'rs of Psychologists*, 976 F.2d 459, 466-68 (8th Cir. 1992) (attorney's actions before medical board of examiners protected by absolute immunity); *State v. Superior Ct.*, 921 P.2d 697, 701 (Ariz. Ct. App. 1996) (assistant attorney general who filed and prosecuted civil injunction action against adult care facility on behalf of Department of Health Services entitled to absolute immunity from later malicious prosecution complaint); *State Bd. of Chi-*

ropractic Exam'rs v. Stjernholm, 935 P.2d 959, 973 (Colo. 1997) (assistant attorney general entitled to absolute immunity for actions in prosecuting state's case for suspension of chiropractor's license); Hanson v. Flores, 486 N.W.2d 294, 296 (Iowa 1992) (assistant county attorney who filed support action against putative father entitled to absolute immunity); Black v. Clegg, 938 P.2d 293, 296 (Utah 1997) (bar counsel entitled to absolute immunity from suit for actions in disciplinary proceeding).

¶ 16. These decisions leave no doubt that Monahan, as the State's advocate before the Board, enjoyed absolute immunity from suit for her activities within that context. The underlying policy reasons that protect criminal prosecutors from tort liability apply with equal force to public attorneys engaged in civil enforcement actions to protect vulnerable adults in nursing homes or other institutional settings from abuse and neglect. The State's interest in the vigorous and uninhibited enforcement of the abuse-prevention law is obviously strong, and the public attorney defending the action must exercise his or her judgment over a range of sensitive decisions that are bound to provoke anger, second-guessing, and retaliatory citizen suits, as this case amply attests. The State's vital interest in the free and independent judgment of those charged with the duty of enforcing the elder-abuse prevention law thus compels the extension of absolute immunity to defendant Monahan's representation of the Department before the Board.

¶ 17. It remains to determine whether the trial court correctly concluded that Monahan enjoyed immunity, qualified or absolute, from plaintiff's claims. Although the allegations of the complaint and subsequent pleadings are difficult to parse, liberally construed they appear to state three basic claims against Monahan in her role as general counsel to the De-

partment. First, plaintiff contends that Monahan engaged in improper ex parte contacts with the Commissioner in discussing the allegations and drafting the Commissioner's decision. In this regard, plaintiff argues that Monahan violated a ministerial duty under 3 V.S.A. § 813, a provision of the Administrative Procedure Act which provides generally that "members or employees of any agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact ... [or] any issue of law ... except upon notice and opportunity for all parties to participate."

¶ 18. The claim is unpersuasive. As noted, Monahan served as the Commissioner's general counsel — not as a separate party or prosecutor — in the initial administrative hearing. Therefore, even assuming that § 813 is applicable to hearings before the Commissioner, the statutory exceptions apply. See 3 V.S.A. § 813(1) (agency decision maker may communicate with other employees of the agency); id. § 813(2) (agency decision maker may have aid and advice of one or more personal assistants). Furthermore, Monahan's rendering of legal advice and assistance to the Commissioner was plainly a discretionary function protected by qualified immunity. Courts have long recognized that government attorneys engage in a variety of tasks, including the rendering of legal advice and counsel, that require the exercise of judgment and thus warrant the protection of qualified immunity to ensure the free and unfettered exercise of that duty. See, e.g., Burns v. Reed, 500 U.S. 478, 492-96 (1991) (qualified immunity provides sufficient protection for prosecutors giving legal advice); Davis v. Zirkelbach, 149 F.3d 614, 618 (7th Cir. 1998) (prosecutor entitled to qualified immunity for acts of giving legal advice); Font v. Carr, 867 S.W.2d 873, 878 (Tex. App. 1993) (assis-

tant district attorney may seek qualified immunity for legal advice to sheriff relating to sufficiency of security offered by bail bondsman). Nothing·in the complaint or the undisputed facts supports a finding that Monahan performed these discretionary duties in bad faith.

¶ 19. Plaintiff next contends that Monahan knew or should have known that the revised report of substantiated abuse was incomplete, and that she violated ministerial duties by failing to investigate further. In analyzing these claims, it is helpful to understand Monahan's role in the investigatory process. Monahan stated without dispute that it was the practice of the Department that general counsel did "not become involved in cases of alleged abuse until the accused person seeks a Commissioner's review. At that point, [general counsel] review[s] the investigator's report and any supporting documents." As to what, if anything, Monahan knew of the original report that the allegation of abuse was unsubstantiated, we note that plaintiff did not allege, nor does the record evidence show, that Monahan was provided with the original report. Blinn did allege in her response to plaintiff's statement of undisputed facts that she had informed Monahan prior to the Commissioner's hearing that she had recommended a finding of "unsubstantiated" in her original report. Although she adduced no affidavit or other evidence to support the statement, it is not disputed by plaintiff or Monahan.

¶ 20. Under these circumstances, it is certainly arguable that Monahan should have investigated further to uncover the original report to which Blinn had allegedly alluded (assuming that it still existed), compared it with the revised report, and advised plaintiff and the Commissioner of Blinn's original findings and recommendation. The elder abuse statute provides that "[u]pon completion of the investigation, a written report describing

*all evidence obtained* and recommending a finding of substantiated or unsubstantiated shall be submitted to the commissioner or designee for final resolution." 33 V.S.A. § 6906(c) (emphasis added). Indeed, the statute specifically defines a "substantiated report" as a determination, after investigation, of abuse "based upon accurate and reliable information." *Id.* § 6902(12). Thus, had the allegations and evidence here suggested that Monahan intentionally withheld from plaintiff nonprivileged information contained in the original report, plaintiff might have been able to show that Monahan violated a ministerial duty under § 6906(c).

¶ 21. The essence of the claim, however, is not that Monahan intentionally withheld nonprivileged information contained in the original report, but rather that she was derelict in failing to "investigate further" and uncover the original report and its findings. While this may have been imprudent and even neglectful, we can not conclude that it violated a ministerial duty under § 6906(c). The decision whether to investigate further was a discretionary one, and therefore protected from suit. It is worth recalling that the very purpose of qualified immunity is to ensure that public officials will enjoy broad decision making discretion free from the threat of liability for errors of judgment. See *Malley v. Briggs*, 475 U.S. 335, 343 (1986) (qualified immunity leaves "ample room for mistaken judgments"). The allegations and evidence here describe a discretionary decision which, however ill advised, nevertheless falls within the scope of qualified immunity.

¶ 22. Plaintiff further asserts that Monahan knew or should have known that the allegations in the revised report were insufficient to support its finding of abuse. He argues specifically that Monahan failed to adequately analyze the evidence against him by neglecting,

among other things, to "read carefully" Dr. Brown's medical report, to investigate the M.B. incident (L.B.'s unsubstantiated claim against a different care giver), and to consider various inconsistencies in L.B.'s allegations. Plaintiff implies that, absent these failures and omissions, Monahan would have moved to dismiss the Commissioner's finding of abuse. It is unclear whether the allegation is directed to Monahan solely in her role as general counsel, or also as attorney for the Department before the Board. It is clear that all of the conduct complained of lies at the core of Monahan's discretionary judgment — whether as general counsel to the Department or as advocate before the Board — to recommend, initiate, and pursue an enforcement action, and thus falls squarely within the scope of both the qualified and absolute immunity afforded such decisions. See *Reed*, 500 U.S. at 492-96 (qualified immunity provides ample protection for prosecutors giving legal advice); *Buckley*, 509 U.S. at 269 (prosecutor absolutely immune from suit for acts taken in "the initiation and pursuit" of prosecution).

¶ 23. Along the same lines, plaintiff asserts that Monahan acted unreasonably in failing to question the reliability of L.B.'s facilitated communications. As noted, Monahan's conduct in assessing the evidence and determining whether, in effect, to counsel in support of substantiation falls squarely within the scope of her discretionary function as general counsel to the Department and her functions as advocate before the Board, and is thus immune from suit. *Reed*, 500 U.S. at 492-96; *Buckley*, 509 U.S. at 269. Furthermore, although plaintiff claims that FC has been shown to be utterly unreliable, the test of a government actor's "good faith" in this context requires that we measure the reasonableness of the conduct "in relation to settled, clearly-established law." *Cook v. Nelson*, 167 Vt.

505, 509, 712 A.2d 382, 384 (1998). Although some jurisdictions have rejected evidence based on FC, see, e.g., *Storch v. Syracuse Univ.*, 629 N.Y.S.2d 958, 964 (Sup. Ct. 1995), we discern nothing in the record or the law to suggest that a reasonable person in Monahan's position could not have relied on the report's conclusion that L.B.'s claims were credible. See, e.g., *Covell ex rel. Johnson v. County of Oswego*, 165 F. Supp. 2d 241, 249 (N.D.N.Y. 2001) (caseworker who relied on autistic child's allegations of sexual abuse through FC did not violate clearly established standard and therefore was entitled to qualified immunity). Thus, we cannot say that, in relying upon L.B.'s testimony, Monahan knew or should have known that she was violating plaintiff's well established rights.

¶ 24. Nor did the existence of conflicting or exculpatory evidence establish that Monahan's decisions as general counsel were unreasonable or in bad faith. Her actions must be considered objectively reasonable if "an officer of reasonable competence could have made the same choice in similar circumstances." *Amy's Enters. v. Sorrell*, 174 Vt. 623, 625, 817 A.2d 612, 617 (2002) (mem.). That was plainly the case here. L.B. gave four separate statements describing the abuse in detail. Although he communicated via FC, he used three different facilitators, none of whom knew what L.B. had told the others. The four FC statements were consistent in their details. While another FC statement was inconclusive — that is, L.B. accused plaintiff of abuse yet also stated that he still liked plaintiff and would work with him again — L.B. never retracted his allegations of abuse. Additionally, L.B. repeated the allegations directly, without using FC, in brief bursts of three or four words to his doctor and his guardian. Thus, a reasonable person in Monahan's position could have concluded that there was sufficient evidence to warrant proceeding with the

administrative hearing. Furthermore, the decision to proceed on the evidence before the Board was within the scope of Monahan's core prosecutorial functions, and therefore enjoyed absolute immunity. *Buckley*, 509 U.S. at 269. Accordingly, the requisites for application of qualified and absolute immunity were satisfied.

¶ 25. Plaintiff also claims that Monahan violated a mandatory statutory duty under 33 V.S.A. § 6906(c), by declining to disclose information related to L.B.'s unsubstantiated earlier claim against another care provider, M.B.[3] Plaintiff did not dispute Monahan's sworn statement that she was unaware of the M.B. incident until plaintiff's counsel mentioned it just prior to the Board hearing, when Monahan was serving in her prosecutorial role. Nor does plaintiff dispute Monahan's statement that she declined a request for disclosure of information related to the incident on the ground that it was confidential under 33 V.S.A. § 6911(a). This statute provided, at the time, that information obtained through reports and investigations of elder abuse "shall remain confidential" and that "[w]ritten records shall be disclosed only to" an enumerated list of persons and agencies, including the person reported to have committed the abuse. Third persons subject to a different complaint by the same elderly or disabled adult are not among the persons statutorily entitled to the investigative records under § 6911, although, as noted, § 6906(c) entitles the subject of a complaint to "all evidence obtained" during an investigation.

---

[3] With respect to Monahan's alleged duty to disclose under 33 V.S.A. § 6906(c), the sole allegation set forth in plaintiff's complaint was the failure to disclose information relating to the prior unsubstantiated complaint against M.B.

¶ 26. How these two statutory provisions relate for purposes of disclosure of the unrelated investigation report involving M.B. is unclear. Monahan arguably could have disclosed the M.B. incident to plaintiff, redacting any information necessary to protect the privacy interests of third persons. Monahan's conclusion that the information was privileged, however, was a discretionary judgment within her core functions as an advocate before the Board, and therefore was protected by absolute immunity. See, e.g., *State v. Superior Ct.*, 921 P.2d at 701 ("As to the discovery violation, it is clear that absolute immunity applies, since the conduct of discovery is both quasi-judicial and within the prosecutor's authority."); *Knapper v. Connick*, 681 So. 2d 944, 950 (La. 1996) (determination of what information must be turned over to defense "is an integral part of the prosecutor's responsibilities as an advocate for the state" and accordingly "entitled to absolute immunity"). Furthermore, even if we were to conclude that Monahan's decision to withhold the information lay outside the core of her prosecutorial functions, and was therefore protected by qualified immunity, the result would be the same, for we can not conclude that plaintiff's entitlement to the information was so clear under the statutory scheme as to render Monahan's decision patently unreasonable and a clear violation of established law. See *Cook*, 167 Vt. at 509, 712 A.2d at 384 (analyzing official's conduct in relation to clearly established law).

¶ 27. Plaintiff additionally claims that, by ultimately withdrawing rather than seeking to reverse the Commissioner's decision, Monahan breached a ministerial duty under 33 V.S.A. § 6906(c), which provides that "[u]pon completion of the investigation, a written report ... shall be submitted to the commissioner or designee for final resolution." Even assuming that withdrawal of the report fell short of a "final resolution," the duty, if

any, to render a "final resolution" is the Commissioner's. Accordingly, we find no basis to hold Monahan liable under this section.

¶ 28. Finally, plaintiff argues that the trial court erred by immunizing the State from suit for the actions of its employees Blinn and Monahan. Plaintiff's complaint against the State alleged that "[a]s a result of Blinn's and Monahan's ... actions ..., the [S]tate of Vermont is liable to the Plaintiff for the prosecution of the Plaintiff without probable cause and with malice." Thus, the claims against the State are derivative of the claims against the individual defendants, and because we have held that Monahan's challenged conduct was protected by absolute and qualified immunity, the State claims predicated thereon must also fail. See *Winfield v. State*, 172 Vt. 591, 594, 779 A.2d 649, 653 (2001) (mem.) ("Plaintiff's claims against the State are derivative of the tort claims against the individual defendants. Since we have held that the conduct complained of was within the scope of the individual defendants' discretionary duties, or simply failed to violate any established rights to which plaintiff was entitled, we discern no basis for the claims against the State.").

¶ 29. Plaintiff also alleged, however, that defendant Blinn violated a ministerial duty, under 33 V.S.A. § 6906(c), by failing to include in her revised report "all evidence" uncovered by her investigation. In this instance, we conclude that the statutory duty is clear and nondiscretionary, and the allegations and the evidence could support a finding that a reasonable official in Blinn's position had no reasonable basis to submit a less than complete report including all of the exculpatory evidence. Accordingly, although Blinn was apparently discharged in bankruptcy, the derivative claim against the State remains. To state a claim against the State, however, plaintiff must establish that it is liable for the negligence of an employee "to the same extent as a private person would be liable." 12 V.S.A. § 5601(a); *Sabia v. State*, 164 Vt. 293, 301, 669 A.2d 1187, 1193 (1995) (plaintiff must establish private analog for action based on state agency's failure to perform its statutory duty to assist children seeking protection from reported and substantiated abuse). The test is whether the allegations state a cause of action "comparable" to a recognized cause of action against a private person. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 498 (1993). "If no such analog to private action exists, suit against the State is precluded." *Amy's Enters.*, 174 Vt. at 623, 817 A.2d at 616.

¶ 30. Plaintiff's claims against Blinn consisted of malicious prosecution and intentional infliction of emotional distress. To state a common law claim for malicious prosecution, a plaintiff must demonstrate that a legal proceeding was instituted with malice and without probable cause, that it terminated in favor of the plaintiff, and that it resulted in damages to the plaintiff. *Siliski v. Allstate Ins. Co.*, 174 Vt. 200, 203, 811 A.2d 148, 151 (2002). Although we express no opinion as to the merits, plaintiff's allegations that Blinn knowingly and maliciously withheld exculpatory information in order to submit a substantiated report of abuse which she knew lacked probable cause, resulting in physical and emotional injury, plainly parallel the basic elements of a common law malicious prosecution claim. Indeed, we note that malicious prosecution claims are routinely brought against state and local prosecutors, law enforcement officers, and investigators for their actions in connection with the filing of criminal proceedings. See, e.g., *Levinsky v. Diamond*, 140 Vt. 595, 597, 442 A.2d 1277, 1279 (1982), *overruled on other grounds by Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990) (claim of malicious prosecution against attorneys in the

attorney general's office); *Cook*, 167 Vt. at 507, 712 A.2d at 382-83 (malicious prosecution action against state police officer for issuing citation charging plaintiff with criminal offense). Malicious prosecution actions are also commonly brought against nonlaw enforcement officials, such as social work investigators and caseworkers, for deliberate misconduct resulting in the filing of allegedly unfounded legal proceedings. See, e.g., *Murray*, 155 Vt. at 623-24, 587 A.2d at 976 (malicious prosecution action against former state agency caseworker by alleged perpetrator of sexual assault based on allegations that caseworker conducted inadequate investigation and withheld exculpatory information). Although these cases *do not specifically address* the private analog issue, they demonstrate a longstanding recognition that the common law malicious prosecution action represents a viable private analog for claims against the State and public officials arising from the bringing of allegedly unfounded legal proceedings.

¶ 31. In light of these decisions, we have little difficulty finding a private analog for plaintiff's malicious prosecution claim against Blinn based on an alleged violation of the statutory duty, under 33 V.S.A. § 6906(c), to disclose exculpatory evidence uncovered during her investigation. Although the trial court here concluded otherwise, its ruling was based on a conclusory finding that the State's duty to investigate allegations of abuse "is a uniquely public one — thrust upon the government as it is not upon private parties." As we have explained, however, the purpose of the private analog provision "is not to bar . . . suits claiming injuries based on the breach of duties performed by government employees performing government services," but merely to prevent government from being visited with novel and unprecedented liabilities untethered from any comparable common law action.

*Sabia*, 164 Vt. at 302, 669 A.2d at 1193. That is plainly not the case here. We conclude, similarly, that plaintiff's claim for intentional infliction of emotional distress, premised on the allegation that Blinn acted outrageously by intentionally or recklessly disregarding her statutory duty, is analogous to suits against private parties, and therefore may also proceed. See *id.* at 306 n.6, 669 A.2d at 1196 n.6 (recognizing private analog for plaintiff's claim for intentional infliction of emotional distress premised on state agency's alleged violation of statutory duty to assist children when evidence supports reports of abuse or neglect). Accordingly, we reverse that portion of the judgment granting the State's motion for summary judgment as to these specific claims, and remand for further proceedings.[4]

*That portion of the judgment granting summary judgment and dismissing the claims against the State based on investigator Blinn's alleged violation of a ministerial duty under 33 V.S.A. § 6906(c) to disclose all evidence obtained is reversed, and the matter is remanded for further proceedings on this issue. In all other respects, the judgment is affirmed.*

---

[4] The parties did not raise, and we therefore do not address, issues relating to whether intentional torts such as malicious prosecution or intentional infliction of emotion distress may be committed "within the scope of employment" under 12 V.S.A. § 5601(a) for purposes of holding the State derivatively liable for the alleged misconduct of its employees. See *Sweet v. Roy*, 173 Vt. 418, 431-32, 801 A.2d 694, 704 (2002) (discussing whether, and under what circumstances, employer may be vicariously liable for employee's intentional torts).

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.