Filed 05/27/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-03907

---

Robert Lafayette v. South Burlington Police Department et al.[1]

---

## DECISION ON DEFENDANTS' MOTIONS TO DISMISS
## AND PLAINTIFF'S MOTION TO AMEND

Plaintiff Robert Lafayette brings this civil rights action against the City of South Burlington, the City's police chief, three South Burlington police officers, South Burlington's school superintendent Violet Nichols, and Chittenden County Deputy State's Attorney Alexandra Sturges. As to the South Burlington defendants, he alleges claims of First Amendment retaliation pursuant to 42 U.S.C. § 1983, abuse of process, violation of the Vermont Constitution's Common Benefits Clause, and negligent supervision. As to Deputy State's Attorney Sturges, he alleges claims of abuse of process and malicious prosecution. The City and the four police defendants move to dismiss for failure to state a claim. Deputy State's Attorney Sturges has filed her own motion, seeking the same relief. While these motions were pending, Mr. Lafayette filed a motion to amend his complaint for the third time. The court grants the motions to dismiss and denies the motion to amend.

## I. MOTION TO DISMISS (City and Police Officers)

The court first addresses the City Defendants' motion to dismiss. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. American Legion, Dept. of Vermont*, 2014 VT 134, ¶ 12 (quotation omitted). Motions to dismiss for failure to state a claim are "disfavored." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. "Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague v. Hundred Acre Homestead*, LLC, 2019 VT 16, ¶ 11, 209 Vt. 514.

---

[1] Mr. Lafayette originally sued the South Burlington Police Department as a defendant. While the court's electronic case management system still names the Police Department in the caption for this case, Mr. Lafayette has since replaced the Police Department with the City of South Burlington as a defendant.

<u>Alleged Facts</u>

The following facts are alleged in the Amended Complaint, drawn from documents as to which the court takes judicial notice, or taken from the affidavit of probable cause, which was specifically referenced in the Complaint and submitted by Mr. Lafayette as Exhibit 1 along with his Amended Complaint on January 3, 2025. *See Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n. 4, 186 Vt. 605 (mem.). The court makes no finding as to their accuracy at this stage of the proceedings. *See Montague*, 2019 VT 16, ¶ 10. The court does not, however, accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 28, 217 Vt. 611 (quotation omitted). Nor does the court accept as true "facts" alleged in the complaint that are blatantly contradicted by documentary evidence upon which the complaint relies.

According to Mr. Lafayette, his legal claims stem from several incidents of public advocacy he engaged in with the South Burlington School District, including:

- a February 9, 2024 Title IX complaint he filed with the U.S. Education Department's Office for Civil Rights, alleging Title IX violations by the South Burlington School District;

- a February 21, 2024 South Burlington school board residency hearing regarding Mr. Lafayette's children, where he "challeng[ed] the district's residency determinations and advocat[ed] for the rights of his children";

- a March 12, 2024 formal residency hearing resulting from Mr. Lafayette's appeal of the residency determinations for his children;

- multiple records requests made throughout 2024 seeking to "[s]hed light on the district's handling of residency and Title IX matters";

- an August 4, 2024 second formal complaint with the Education Department's Office for Civil Rights, alleging additional violations by the South Burlington School District; and

- a September 11, 2024 report to the South Burlington Police Department about a June 26, 2024 incident during a varsity basketball practice at South Burlington High School where a coach reportedly "yelled at" Mr. Lafayette's son, "raised a fist in an intimidating manner, and made comments referencing [Mr. Lafayette's] legal actions." Am. Compl., p.9.

Mr. Lafayette alleges that he requested an investigation and formal report about the basketball practice incident, and that the officer documented the complaint but did not conduct any investigation or take protective action. He alleges that the officer "falsely characterized Lafayette as a frequent complainant against the school district, despite this being his first report." Am. Compl., p.10.[2] On September 18,

---

[2] Because Mr. Lafayette does not consistently number the paragraphs in his Amended Complaint, the court cites to page numbers instead.

2024, South Burlington school superintendent Violet Nichols approached the Shelburne Police Department to "pursue criminal charges" against Mr. Lafayette. Am. Compl., p.10. Shelburne Police declined to pursue charges and instead advised Nichols to file a civil stalking order. The South Burlington Police also advised her to seek a stalking order, which she did on September 19, 2024. This court granted a temporary restraining order, and then held a contested hearing on the request:

> At the hearing, plaintiff testified about defendant's behavior.[3] She stated that she was concerned for her safety and that of her family. She testified that since January 2024, defendant had been threatening and harassing her through email and by telephone. She indicated that at a school board meeting in February 2024, defendant attended, was agitated, and threatened her physical safety by stating that he hoped she got hit by a car. She stated that defendant emailed her daily, sometimes multiple times a day, and called her office with such frequency that staff were afraid to be at work. She explained that some emails were lengthy and included profanities, threats, and intimidating language. She indicated that defendant had filed numerous suits against her. She testified that defendant obtained her personal cell phone number that is not publicly listed and in September 2024 left a voicemail, indicating that because his family was suffering, hers would too, and listing her family members by name. Plaintiff stated that she had altered her daily patterns to protect herself and her family, and that the harassment impacted her ability to do her job or live without fear. She explained that she had a safety plan and did not communicate directly with defendant, instead directing all communication through her attorney.
>
> Defendant also testified. He stated that he had never spoken directly to plaintiff or made any actionable threat. He argued that his communications were legally protected because he was advocating for his children to a public official. Defendant admitted that in frustration at the school board meeting he said that he hoped plaintiff got hit by a bus. He argued that it was merely a frustrated comment and not a threat. He stated that he did not intend to threaten plaintiff or cause any physical harm.
>
> The court found by a preponderance of the evidence that defendant engaged in a pattern of threatening behavior and following plaintiff that amounted to stalking based on the following findings. Defendant made threats against plaintiff at the school board meeting in February 2024. Subsequently, defendant contacted plaintiff consistently with a level of persistence that indicated animosity when combined with the earlier threats of harm. Defendant located plaintiff's unlisted telephone number and used that number to make threatening statements, including stating that if his son had to suffer then plaintiff and plaintiff's family would suffer as well. The court found that defendant conducted himself in a way that would make a reasonable person fear for their safety and to suffer emotional distress and indeed plaintiff changed her behavior in response. The court ordered defendant to stay 300 feet away from plaintiff and plaintiff's children. The court

---

[3] In this block quotation, "plaintiff" refers to Ms. Nicols and "defendant" refers to Mr. Lafayette.

> provided an exception allowing defendant to go to the school to drop off or pick
> up his children and attend their athletic events.

*Nichols v. Lafayette*, No. 24-AP-288, 2025 WL 826911, at *1 (Vt. Mar. 14, 2025) (unpub. mem.). The Vermont Supreme Court affirmed the stalking order. *Id.* at *3.

Later in September 2024, South Burlington Police prepared an affidavit of probable cause and issued a citation for Mr. Lafayette. A judge found probable cause for the charges of misdemeanor stalking and misdemeanor disturbing the peace by telephone. *See State v. Lafayette*, 24-CR-10001. A different judge then denied Mr. Lafayette's motion to reconsider the finding of probable cause. *See id.* The criminal case remains pending. Mr. Lafayette alleges that the affidavit included false claims, "such as the fabricated allegation that Lafayette threatened to use his car to harm others." Am. Compl., p.11. He also alleges that the affidavit "explicitly referenced" the "financial burden" of his lawsuits on the South Burlington School District, and that this "demonstrate[es] that Defendants' actions were driven by retaliatory motives rather than legitimate law enforcement concerns." Am. Compl., p.11–12.

## Discussion

The City and the four police defendants move to dismiss on grounds of sovereign immunity, qualified immunity, and failure to state a claim as to each claim asserted. The crux of all of Mr. Lafayette's claims is his allegation that South Burlington Police officers lied in the affidavit of probable cause by "reclassif[ying] his constitutionally protected speech as criminal conduct." Am. Compl., p.11. This contention is directly belied by the affidavit itself, which Mr. Lafayette submitted along with his amended complaint. The affidavit indeed references Mr. Lafayette's history of filing complaints and reports with public officials, making records requests, and participating in administrative hearings with the South Burlington School District regarding his children's residency status. But it expressly did not "reclassify" this conduct as criminal conduct, nor did it otherwise attempt to criminally charge him for First Amendment-protected activity. Instead, after laying out the timeline of Mr. Lafayette's interactions with the School District and public officials in painstaking detail, the Affidavit explicitly recognized his ongoing complaints and litigation and concluded that his conduct had "elevated" to the point of criminal conduct: "Lafayette and the South Burlington School District appear to be heavily involved with ongoing complaints and other legal litigation related to Lafayette and his children. However, the legal proceedings have elevated to the point of Lafayette stalking Violet Nichols." Aff. of Prob. Cause ¶ 27. The Affidavit even observes that, after the February 21, 2024 school board meeting (months before the officers found probable cause to arrest Mr. Lafayette), "South Burlington Police reviewed the meeting, and determined at that time the comments

of Lafayette did not rise to the level of a criminal offense." Aff. of Prob. Cause ¶ 5. This directly contradicts any contention that the police treated Mr. Lafayette's constitutionally protected speech as criminal conduct.

While Mr. Lafayette may have engaged in "protected advocacy," Am. Compl., p.13, that advocacy is plainly not what the officers charged him for. Rather, they charged him for his threatening behavior. It is well established that "there is no First Amendment right to engage in true threats." *Nichols v. Lafayette*, No. 24-AP-288, 2025 WL 826911, at *2 (Vt. Mar. 14, 2025) (unpub. mem.) (citing *State v. Noll*, 2018 VT 106, ¶ 22, 208 Vt. 474). As our Supreme Court has already concluded with respect to the same conduct that was at issue in Mr. Lafayette's stalking case:

> Regardless of whether plaintiff is a public official, the First Amendment does not entitle [Mr. Lafayette] to engage in threatening behavior. [Mr. Lafayette's] actions here went beyond expressing criticism or lawful advocacy; the court found that defendant threatened plaintiff and her family and that in the context of defendant's other behavior, plaintiff reasonabl[y] feared for her safety. *See Noll*, 2018 VT 106, ¶¶ 37–39 (explaining that true threats include actions that would objectively cause a reasonable person familiar with the context of the communication to interpret it as a "threat of injury" (quotation omitted)). This behavior is not protected speech, and therefore there was no First Amendment violation.

*Id*. There is absolutely no indication—aside from Mr. Lafayette's wholly conclusory allegations—that the officers somehow "lied" by classifying his First Amendment-protected conduct as criminal.

Mr. Lafayette also alleges that the Affidavit makes a specific "false claim," that is, "the fabricated allegation that Lafayette threatened to use his car to harm others." Am. Compl., p.11. He references page 6 of the Affidavit, which in turn references Ms. Nichols's report to police that "Lafayette has threatened to run her and the school attorney, Mark McDermott, over and has made gestures of hanging them with his earbuds." Aff. of Prob. Cause ¶ 14. In his amended complaint, Mr. Lafayette concedes saying, "sure . . . I hope you get hit by a bus too!" though he defends that comment as "hyperbolic." Am. Compl., p.11. A person familiar with the context could reasonably interpret Mr. Lafayette's comment as a threat to run over individuals with a car. See *Noll*, 2018 VT 106, ¶ 37 (We evaluate whether speech rises to the level of a true threat objectively—that is, whether an ordinary, reasonable person familiar with the context of the communication would interpret it as a threat of injury.") (quotations omitted) Courts do "not engage in a rigid adherence to the literal meaning of a communication without regard to its reasonable connotations." *Id*. ¶ 38; *see also State v. Hinchliffe*, 2009 VT 111, ¶ 27, 186 Vt. 487 ("Without context, some behaviors do not seem inherently threatening."). Moreover, this court already found that Mr. Lafayette's comment that "he hoped [Ms.

Nichols] got hit by a [vehicle]" was a threat and part of a pattern of threatening behavior that amounted to stalking. *Nichols*, 2025 WL 826911, at *1.

All of Mr. Lafayette's claims depend to some degree on the allegation that the officers lied in the Affidavit of Probable Cause. Thus, without a colorable claim that the Affidavit was falsified, almost all of Mr. Lafayette's claims fail for that reason alone. His First Amendment retaliation claim, for instance, alleges that he "engaged in protected advocacy," and that Ms. Nichols and the police officer defendants contributed to the submission of a "false affidavit mischaracterizing [Mr. Lafayette's] speech to justify retaliatory criminal charges." Am. Compl., p.13. His First Amendment claims against Chief Burke and the City are merely vague and conclusory allegations: he claims that Chief Burke "[f]ailed to supervise officers, allowing the retaliatory actions to proceed," and that the City "[n]eglected to ensure that [police] officers upheld constitutional protections, enabling systematic retaliation." *Id*. He alleges that the Affidavit's "explicit[] reference[]" to the "financial burden of Lafayette's lawsuits" on the school district "demonstrat[es] that [his] actions were driven by retaliatory motives rather than legitimate law enforcement concerns." *Id*., pp.11–12. While the Affidavit mentions that "Nichols stated Mr. Lafayette is constantly threatening to sue the district and is making multiple public records requests, which are costing the district money," Aff. of Prob. Cause ¶ 10, that is patently not the basis for the arrest and that reference in the Affidavit fails to demonstrate any retaliatory motive. As discussed above, the officers concluded that there was probable cause based on Mr. Lafayette's threatening behavior that went beyond First Amendment-protected activity.

Mr. Lafayette cites two U.S. Supreme Court cases to support his argument that "even when probable cause exists, a First Amendment retaliation claim still survives if the government's adverse action was motivated by protected speech." Pl.'s Sur-Reply at 18. In fact, those cases actually affirm that "probable cause should generally defeat a retaliatory arrest claim," but that

> a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech." . . . For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest. In such a case, [] probable cause does little to prove or disprove the causal connection between animus and injury.

*Nieves v. Bartlett*, 587 U.S. 391, 406–07 (2019) (quoting *Lozman v. Riviera Beach*, 585 U.S. 87, 99 (2018)). Here, of course, the conduct for which Mr. Lafayette was arrested was stalking and threatening, a far cry from the jaywalking example that Chief Justice Roberts provided in *Nieves*. There is no allegation, nor can the court otherwise conclude that stalking and threatening behavior is something for which officers typically exercise their discretion not to arrest. Moreover, as discussed above, Mr. Lafayette has failed to adequately plead any retaliatory motive for his arrest, and the Affidavit of Probable Cause demonstrates that there was no such motive. *Nieves* and *Lozman* do not aid Mr. Lafayette's cause.

Mr. Lafayette's other claims fare no better. His abuse of process claim alleges that "Defendants misused legal processes by filing a false affidavit and pursuing criminal charges for the improper purpose of silencing Plaintiff's advocacy." Am. Compl., p.14. His Common Benefits claim alleges that Defendants treated him "unequally" by, among other things, "[r]eclassif[ying] his constitutionally protected speech as criminal conduct. *Id.*, p.15. And his negligent supervision claim alleges that Chief Burke negligently supervised his officers by allowing "[t]he submission of a false affidavit" and "[t]he reclassification of constitutionally protected speech as criminal conduct." *Id.*, p.16.

To the extent his Common Benefits and negligent supervision claims rely on distinct factual allegations, the claims still fail. For example, he alleges that Defendants violated the Common Benefits Clause by "ignor[ing] his credible September 11, 2024 report of harassment," "influenc[ing] law enforcement to target [him] unfairly," and—as to the City—by allowing the officer to "engage in selective enforcement." But, simply put, he wholly fails to satisfy the requirements for pleading a Common Benefits violation. *See Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 24, 217 Vt. 611 (To state a Common Benefits claim, "[t]he complaint must contain a short and plain statement that (1) defines the part of the community disadvantaged by the legal requirement; (2) identifies the governmental purpose, if any is known, in excluding a part of the community from the benefit; and (3) explains how the omission of a part of the community from the benefit does not bear a reasonable and just relation to a governmental purpose identified.") (quotation and footnote omitted). It is "insufficient to assert that there is a law that results in some people having a benefit and others not, accompanied by the legal conclusion that this difference in treatment violates the Vermont Constitution." *Id*. Mr. Lafayette has completely failed to meet his burden and, thus, has not overcome the presumption of constitutionality. *See id*. ¶ 21.

In his negligent supervision claim, Mr. Lafayette also alleges that Chief Burke negligently supervised his officers by allowing Officer Lasker to "dismiss" his September 11, 2024 "report"

concerning the alleged June 26, 2024 incident with his son and a basketball coach at the high school. Am. Compl., p.16; *see also id*., pp. 9–10. According to the Affidavit of Probable Cause: "Lafayette reported that his son was harassed and physically intimidated by a coach when the coach yelled at his son and raised a fist in a[n] intimidating manner. This report was documented and based on the information provided didn't rise to the level of a criminal offense." Aff. of Prob. Cause ¶ 12. The officers are plainly entitled to qualified immunity for this alleged failure to investigate. "Qualified immunity attaches to public officials who are (1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts. Good faith exists where an official's acts did not violate clearly established rights of which the official reasonably should have known." *Baptie v. Bruno*, 2013 VT 117, ¶ 11, 195 Vt. 308 (citation and quotations omitted). The scope of a police officer's investigation into a complaint is "at the heart of his official and discretionary duties as a police officer." *Id*. ¶ 12. Here, the officers were plainly acting during the course of their employment and within the scope of their authority, there is no indication in the pleadings that they acted in bad faith, and the failure to investigate further is plainly a discretionary act. *See*, *e.g.*, *id*. ¶ 12–13) (police officer entitled to qualified immunity in suit alleging liability for negligent investigation of complaint against man who thereafter murdered victim); *Winfield v. State*, 172 Vt. 591, 593–94 (2001) (concluding, on motion to dismiss, that "game warden's decision to issue an investigative report" was a discretionary duty and protected by qualified immunity); *Kane v. Lamothe*, 2007 VT 91, ¶ 10, 182 Vt. 241 ("a police officer's decision to arrest . . . is inherently discretionary"); *Czechorowski v. State*, 2005 VT 40, ¶ 21, 178 Vt. 524 ("The decision whether to investigate further was a discretionary one, and therefore protected from suit."). Moreover, there is no indication in the pleadings or otherwise that the officers "violate[d] clearly established rights of which the [officers] reasonably should have known." *Livingston v. Town of Hartford*, 2009 VT 54, ¶ 14, 186 Vt. 547. There is certainly no right to demand that an officer further investigate a complaint or issue a report.[4]

Because the Amended Complaint plainly fails to state a claim based on the reasoning above, there is no need to wade into the sovereign immunity arguments. The court notes, however, that the only defense to sovereign immunity raised by Mr. Lafayette is his contention that the U.S. Supreme Court "eliminated sovereign immunity for municipalities in civil rights cases" in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* indeed held that municipalities "can be sued directly

---

[4] Mr. Lafayette argues that qualified immunity requires factual development and cannot be decided on a motion to dismiss. Not so. While qualified immunity often requires factual development, it can be decided at the pleading stage in the appropriate case. *See*, *e.g.*, *Winfield*, 172 Vt. at 593–94.

under § 1983 for monetary, declaratory, or injunctive relief" where the alleged unconstitutional action implements or executes a municipal policy or custom. *Id.* at 690–91. But Mr. Lafayette alleges no unconstitutional action, let alone a municipal policy or custom that implements such action. As discussed above, he fails properly to plead any constitutional violation.

Lastly, with respect to this motion, the court observes that Mr. Lafayette makes multiple requests for Rule 11 sanctions against Defendants in his 36-page—and at times bombastic—sur-reply. *See*, *e.g.*, Pl.'s Sur-Reply at 4. That request is improper because he did not file a separate motion for sanctions as required by Rule 11. *See* V.R.C.P. 11(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."). Moreover, his request for sanctions is completely meritless and the court would deny it even if he had properly filed a Rule 11 motion.[5]

## II. **MOTION TO DISMISS (Attorney Sturges)**

Deputy State's Attorney Sturges separately moves to dismiss the claims against her on grounds of absolute prosecutorial immunity and failure to state a claim for either abuse of process or malicious prosecution. Mr. Lafayette has not filed an opposition to that motion. The court grants the motion for the reasons aptly articulated therein. *See Pharmacists Mut. Ins. Co. v. Myer*, 2010 VT 10, ¶ 18, 187 Vt. 323 (Where party "filed no opposition to the motion to dismiss," his "failure to oppose the motion effectively waived the claims.").

## III.    **MOTION TO AMEND**

Mr. Lafayette attempts to remedy the fatal infirmities as to his claims against Attorney Sturgess in his Second Amended Complaint by moving to amend for the third time.[6] That attempt is in vain. As grounds for his proposed third amendment, he alleges "newly discovered evidence" and that the proposed amendment "refine[s]" his legal claims. Bluntly, none of his new allegations so much as move the needle. The so-called "newly discovered evidence" he refers to includes motions for standby counsel and for a competency evaluation that were filed in his criminal case, which Mr. Lafayette suggests were somehow "used strategically to undermine [his] self-representation and civil claims." He

---

[5] Indeed, Mr. Lafayette's sanctions request is itself at least borderline frivolous and possibly sanctionable.

[6] Mr. Lafayette filed his Amended Complaint on January 3, 2025, and Defendants moved to dismiss on January 17. Mr. Lafayette then filed his Second Amended Complaint on February 25, which merely added Defendant Sturges as a party and did not affect the claims as to the other Defendants. Then, on April 23, Mr. Lafayette moved to file a Third Amended Complaint.

also refers to a temporary restraining order that was apparently served by the South Burlington Police Department rather than the Burlington Police Department. There is no reason any of those allegations would allow his proposed Third Amended Complaint to survive a motion to dismiss. Similarly, Mr. Lafayette's "refinement" of his allegations concerning malicious prosecution, abuse of process, and prosecutorial immunity add nothing to the mix that would save his claims.

## **ORDER**

The court grants Defendants' motions to dismiss and denies Plaintiff's motion to amend. All claims against the City of South Burlington Defendants (the City itself, its police chief, and the three South Burlington police officers) and Chittenden County Deputy State's Attorney Alexandra Sturges are dismissed with prejudice. This leaves only Mr. Lafayette's claims against Defendant Violet Nichols. As far as appears from the court's file, she has not yet been served, now well past 6 months from the filing of this case. Thus, the court orders that Plaintiff show cause, within 10 days of this Order, why it should not dismiss all claims against her pursuant to V.R.C.P. 41(b)(1)(iii).


Electronically signed pursuant to V.R.E.F. 9(d): 5/27/2025 1:11 PM

_____
Samuel Hoar, Jr.
Superior Court Judge